277 So.2d 827 (1973)
UNIWELD PRODUCTS, INC., Petitioner,
v.
INDUSTRIAL RELATIONS COMMISSION, FLORIDA DEPARTMENT OF COMMERCE, TALLAHASSEE, Florida and Janet G. Bauman, Respondents.
No. 72-230.
District Court of Appeal of Florida, Fourth District.
May 23, 1973.
Libo B. Fineberg, Fort Lauderdale, for petitioner.
James R. Parks, Miami, and Kenneth H. Hart, Jr., Tallahassee, for respondent-Industrial Relations Commission.
WALDEN, Judge.
An appellate evaluation of this certiorari matter leaves us convinced that the questioned unemployment compensation order of the Industrial Relations Commission represented a clear departure from the essential requirements of law.
Very simply, did the employee leave her employment without good cause attributable to her employer? Section 443.06, F.S. *828 1971, F.S.A. Contrary to the Industrial Relations Commission's view, we feel that the claims examiner and appeals referee correctly determined that the employee was disqualified from receipt of benefits because she had no such good cause.
The claims examiner found no sufficient cause with reference to the claimant because "you quit at lunch time and told your fellow employees you would not be back."
The appeals referee found no such sufficient legal cause.[1]
The Industrial Relations Commission reviewed the same record, interpreted the same testimony differently, and thereby reversed the claims examiner and appeals referee by independently finding that the claimant left her employment with good cause attributable to the employer.[2]
*829 What is the criteria to be used in determining the question of good cause?
To voluntarily leave employment for good cause, the cause must be one which would reasonably impel the average able-bodied qualified worker to give up his or her employment. Sun Shipbuilding & Dry Dock Co. v. Unemployment Compensation Board of Review, Pa. 1948, 358 Pa. 224, 56 A.2d 254. See also: Gatewood v. Russell, Colo. App. 1970, 478 P.2d 679; Geckler v. Review Board of Indiana Employment Security Division, Ind. 1963, 244 Ind. 473, 193 N.E.2d 357. Smith v. Unemployment Compensation Board of Review, 1956, 181 Pa. Super. 185, 124 A.2d 707; Hemmings v. Unemployment Compensation Board of Review, 1961, 196 Pa.Super. 604, 175 A.2d 916.
The applicable standards are the standards of reasonableness as applied to the average man or woman, and not to the supersensitive. Andala v. Ganus, Ala. 1959, 269 Ala. 571, 115 So.2d 123. The burden is on the claimant to prove that he has met the statutory eligibility requirements. Newkirk v. Florida Industrial Commission, Fla.App. 1962, 142 So.2d 750; Florida Industrial Commission v. Ciarlante, Fla. 1955, 84 So.2d 1. Here the claimant has failed to demonstrate good cause for leaving her job. The evidence showed that her employer did not discriminate against her; in fact, he was frequently known to "yell and scream" at many employees. Applying a reasonableness standard, the employer's conduct was not such that it would cause the average man or woman to resign under the same circumstances.
Analyzing the criteria and applying them to the facts in this case, construed most carefully in favor of the claimant and the Industrial Relations Commission's decision, it is our judgment that the essential requirements of law have been violated in that the claimant clearly did not have legal cause for quitting her employment. If it were otherwise, the legal hurdle of good cause attributable to the employer, which is written in the law, would be reduced to shambles and nothingness. It would be indeed a dull and unimaginative employee who, upon quitting, could not dredge up and highlight some friction point in the past employment relationship. Just as a matter of common sense and everyday experience, we believe every person who has *830 experienced the employment situation has had some special pet gripe, grudge or grievance, which could be pumped up and elevated into a cause if desired. The possibilities stagger the imagination, when one considers the many physical and personality traits which a sensitive or non-average person might find objectionable. For instance, the supervisor's false teeth click; some have a stern and frowning mien; some people employ questionable hygiene habits of one kind or another; some people have an irritating courgh or laugh, ad infinitum. The average employee has, or should have, a modicum of tolerance and an ability to bear these matters which do not markedly impress or bother the average fellow worker.
All circumstances considered, certiorari is granted. The decision of the Industrial Relations Commission is quashed and the cause remanded with instructions to affirm the decision of the appeals referee.
Certiorari granted; decision quashed; and cause remanded with instructions.
REED, C.J., concurs.
MAGER, J., dissents, with opinion.
MAGER, Judge (dissenting):
With all due respects to the able opinion of the majority I must dissent. It is my view that the petitioner has failed to demonstrate that the order of the Industrial Relations Commission constitutes a departure from the essential requirements of the law so as to support a grant of certiorari.
On the contrary, what petitioner has demonstrated is that reasonable men may differ on what constitutes "good cause" and that the question presented is largely one of fact. Petitioner has simply succeeded in convincing this court that "good cause" did not exist. To urge that the circumstances surrounding the claimant's voluntary departure did not constitute "good cause" and that the order of the Industrial Relations Commission was, therefore, "erroneous", hardly supports the fundamental burden the moving party must carry when seeking review by certiorari, namely, that the order of the lower tribunal departs from the essential requirements of law. Brooks v. Owens, Fla. 1957, 97 So.2d 693.
In certiorari it is not the function of the reviewing court to re-weigh or evaluate the evidence which was presented before the lower tribunal; the reviewing court merely examines the record to determine whether the order of the lower tribunal was supported by competent substantial evidence. DeGroot v. Sheffield, Fla. 1957, 95 So.2d 912; State Beverage Department v. Ernal, Inc., Fla.App. 1959, 115 So.2d 566. See also Westerman v. Shell's City, Inc., Fla. 1972, 265 So.2d 43. Where, for example, the order of the lower tribunal is not supported by competent substantial evidence it reasonably follows that such order departs from the essential requirements of law and certiorari should be granted. In addition, even with the presence of competent and substantial evidence if the order under review is predicated upon a wrong view of the law as applied to the evidence, certiorari may be granted. State Beverage Department v. Ernal, Inc., supra.
In my opinion the decision of the Industrial Relations Commission is (1) supported by competent substantial evidence and (2) reflects an application of the proper rule of law.
In the case under consideration the question is essentially whether the circumstances surrounding the employee's leaving her employment were such as to constitute "good cause". Whether or not the circumstances surrounding such termination constituted good cause were primarily questions of fact to be resolved by the trier of fact. Lewis v. Review Board of Indiana Emp. Sec. Div., Ind. App. 1972, 282 N.E.2d 876.
*831 The proper standard to be utilized in determining what constitutes good cause is set forth in Electrical React. Corp. v. Unemployment Comp. B. of R., 169 Pa.Super. 269, 82 A.2d 277, 278 (1951):
"To constitute good cause, the employes' leaving must be for `adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith.' In re Sturdevant Unemployment Case, 158 Pa.Super. 548, 45 A.2d 898, 903. See also Kaylock Unemployment Compensation Case, 165 Pa. Super. 376, 67 A.2d 801. The circumstances here meet these tests. These claimants were not required to continue being subjected to unjust accusations, abusive conduct and profane language. That they acted in good faith is borne out by their attempt to resume work four days after leaving, on the strength of the company's promise to settle the matter. There is nothing in the evidence which can be said to point to their `voluntarily leaving without good cause.' There was ample evidence of `good cause,' which the board chose to believe as true."
It would appear that whether or not the circumstances surrounding the employee's termination of employment met the "test of reason" were factual determinations to be made by the lower tribunal. In this regard the Industrial Relations Commission, while recognizing that the complained of (employer's) conduct "may have been tolerated by other employees", specifically found:
"... His conduct was the sole reason for her leaving. Although claimant did not suffer any physical detriment as a result of the corporate officer's conduct, she did suffer detriment in the form of emotional and mental stress and we believe that detriment sufficient to constitute good cause under the law. To hold otherwise would require an employee to remain in employment conditions which are intolerable or leave that employment and have their right to unemployment compensation benefits forfeited." (Emphasis supplied.)
Admittedly, the "test of reason" is one that should be measured by the actions of the average man or woman under similar circumstances rather than the reactions of an individual employee under such circumstances. However, it is clear that such a test or standard cannot operate in the abstract and must be determined by the particular factual circumstances. Implicit in the finding of the Industrial Relations Commission that "good cause" existed is the determination that the employer's conduct was such as would cause the average man or woman to resign under the same circumstances. The fact that this court does not agree with the Industrial Relations Commission's analysis of those circumstances or the fact that this court might have reached a different conclusion does not in my opinion support the granting of certiorari.
Moreover, a denial of certiorari does not constitute a determination by this court of anything more than the proposition that the petitioner has failed to demonstrate that the order under review departs from the essential requirements of law. The speculation as to the myriad factual circumstances that might arise between an employer and an employee is in no way dispositive of the merits of the petition under consideration. Each factual circumstance must stand or fall when measured by the "test of reason". Cf. O'Neal's Bus Service, Inc. v. Employment Secur. Com'n, Super.Ct.Del. 1970, 269 A.2d 247; Williams v. Florida Industrial Commission, Fla.App. 1961, 135 So.2d 435.
The Industrial Relations Commission has properly utilized this "yardstick"; I would affirm the decision of the Commission and deny certiorari.
NOTES
[1] "DECISION OF APPEALS REFEREE

* * * * *
"FINDINGS OF FACT: The twenty-four year old claimant has some experience in the field of art known as silk screening. On April 19, 1971, she began work in the advertising department of a company that manufactures welding equipment. From the beginning, the claimant has been unhappy in her work. The company president is a man whose trait of character causes him to speak in a loud voice. In matters that displease him, his voice rises to a point that might be construed as yelling to some people and can be heard all over the plant. However, at no time does the president speak with animosity to any particular individual. His loud voice is just his way of expressing dissatisfaction. There have been times when mistakes of the claimant have so caused him to speak loudly, not at the claimant, but merely expressing dissatisfaction with the claimant's mistake. Such occasions were not frequent. Notwithstanding that the president's loud voice is no more than a trait of character, the claimant decided not to tolerate it and, without any comment, when she went to lunch on July 24, 1971, she never returned. Incidentally, other than a dislike for the loud voice and some minor nervousness, the claimant's health and welfare was in no way jeopardized in her job. "The claimant voluntarily left her employment without good cause attributable to the employer.
"REASONS FOR DECISION: The Florida Unemployment Compensation Law provides that an individual shall be disqualified for benefits if he voluntarily leaves his employment without good cause attributable to the employer. The term `good cause,' as it is used in the Statute, shall include in addition to those good causes attributable to the employer, such good causes as may be attributable to the illness or disability of an individual, other than pregnancy.
"The record and evidence in this case does not show that the claimant's health or welfare was in any danger or jeopardy whereby it could give her good cause to quit. It is quite true that she had some nervousness and, like any one else, she resented a loud voice. However, the record does show that the president's loud voice was not directed to any one individual in particular, but was merely a trait of character, and that his voice could be heard all over the plant was tolerated by all the other individuals.
"To have good cause attributable to the employer for leaving work, it must be shown that the acts or course of conduct of the employer are to such an extent or degree as to create a detriment to the individual. The only detriment that was created to the individual here was probably merely addressing her in a loud voice and she more or less felt that the president's actions were not in good taste. On the whole, however, it cannot be held that the actions of the company president could be construed as creating a detriment to the claimant so as to give her good cause to leave her work."
[2] "UNEMPLOYMENT COMPENSATION ORDER OF INDUSTRIAL RELATIONS COMMISSION

* * * * *
"FINDINGS OF FACT: The claimant, age 24, became employed in the advertising department of the employer on April 19, 1971. Almost immediately, claimant became dissatisfied with the conditions of her employment primarily because of the conduct of the corporate president.
"The corporate president is an individual who, when he is upset, shouts in a loud voice which is audible throughout the plant. On more than one occasion the corporate president became upset as a result of errors committed by the claimant and in correcting or reprimanding her he resorted to his customary shouting tone. His conduct made the claimant nervous and upset to the point where she found it difficult to perform her duties. She tolerated the situation for approximately three months and, after a final incident on July 24, 1971, decided that she could tolerate it no longer. She resigned.
"The claimant voluntarily left her employment with good cause attributable to her employer.
"REASONS FOR DECISION: The Florida Unemployment Compensation Law provides that an individual shall be disqualified for benefits if he voluntarily leaves his employment without good cause attributable to his employer or without good cause which is attributable to an illness or disability, other than pregnancy, requiring separation. Clearly, the claimant did voluntarily leave her employment and her leaving was not attributable to any illness or disability requiring separation. Therefore, the only question remaining is whether the claimant's voluntary leaving was for good cause attributable to her employer. The Referee found that the employer's conduct was the result of a character trait and that his shouting was directed not at any individual but at the individual's errors or mistakes. He reasoned that the claimant did not suffer any detriment as the result of the corporate president's conduct, and, therefore, her leaving was without good cause attributable to her employer. We cannot agree.
"The corporate president's conduct may well have been attributable to a character trait and may have been tolerated by other employees. Nevertheless, claimant left her employment because the corporate president's conduct upset her and made her nervous to the extent that she could not perform her duties satisfactorily. His conduct was the sole reason for her leaving. Although claimant did not suffer any physical detriment as a result of the corporate officer's conduct, she did suffer detriment in the form of emotional and mental stress and we believe that detriment sufficient to constitute good cause under the law. To hold otherwise would require an employee to remain in employment conditions which are intolerable or leave that employment and have their right to unemployment compensation benefits forfeited."