456 So.2d 1219 (1984)
Thomas A. LeDEW, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, and Suwannee County School Board, Appellees.
No. AV-435.
District Court of Appeal of Florida, First District.
September 17, 1984.
Rehearing Denied November 1, 1984.
*1220 Howell L. Ferguson of Ferguson & Sherrill, Tallahassee, for appellant.
William R. Slaughter, II of Slaughter & Slaughter, Live Oak, Geri Atkinson-Hazelton, Gen. Counsel, and Richard S. Cortese, Unemployment Appeals Com'n, Tallahassee, for appellees.
*1221 ERVIN, Chief Judge.
The appellant appeals an order of the Unemployment Appeals Commission, finding that the appellant/claimant voluntarily left employment without good cause attributable to the employer, and was therefore disqualified for unemployment benefits as provided for under Section 443.101(1)(a), Florida Statutes (1981). We disagree with the Commission's conclusion that claimant voluntarily left his employment, and therefore reverse with directions.
This case has had a rather curious history. Two hearings were held before the appeals referee and two orders entered, each with conflicting recommended conclusions. The claimant, employed as a lunchroom director/personnel director/teacher certification administrator for the Suwannee County School Board, was advised in the early part of February 1982 that his non-tenured position had been deleted for the coming academic year. Later, on March 4, 1982, when the superintendent confronted claimant with having made reports to the state attorney's office regarding the superintendent's official misconduct, claimant admitted doing so, and the superintendent then asked for his resignation on the ground of gross insubordination, which was submitted in writing effective that date. Based on the evidence before him, the appeals referee determined that the record showed that the claimant was discharged for reasons other than misconduct connected with his work and he was therefore not barred from receiving benefits under the provisions of section 443.101(1)(b).
After reviewing the record, the Unemployment Appeals Commission vacated the decision of the appeals referee, holding that the referee failed to inquire whether the school superintendent, in his capacity as the employer's executive officer, was vested by statute (section 230.33(7)(e)) with the authority to dismiss the claimant. The Commission observed that the statute empowers a school superintendent with the authority only to recommend employees for dismissal, not dismiss them; that such power abides only with a school board. It also noted that it appeared from the record that claimant was aware that he had the right to take the matter of his resignation before the school board and had failed to do so. Accordingly, the Commission directed the referee to determine whether the claimant voluntarily left his employment without good cause attributable to his employer under the provisions of section 443.101(1)(a).
On remand to the referee, the latter found that the record showed that "the claimant voluntarily quit his job. He did this because his immediate supervisor demanded his resignation on the grounds of gross insubordination." As a result, the referee concluded that the claimant was disqualified for unemployment benefits for having voluntarily left his employment without good cause attributable to the employer. This conclusion was approved by the Commission. There appears to be a facial inconsistency in the referee's order. One might well ask how one can be said to have voluntarily resigned when he does so in the face of a demand to resign? The answer in this case depends upon the Commission's application of public school law to the facts. The referee found that because the school superintendent had no authority to discharge the claimant, the latter had an avenue available to him before the board to grieve his resignation; that as he failed to take advantage of this method of relief, of which he was aware, he must be considered to have voluntarily resigned his position; therefore he was disqualified from benefits.
The order before us is a mixed blend of law and facts. Although it is not our province to reverse a final administrative order which is amply supported by competent, substantial evidence, the same standards of review do not apply to an erroneous application of the law to the facts. If we find "that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action," we may, among other things, "[s]et aside or modify the agency *1222 action, ... ." Section 120.68(9)(a), Florida Statutes. The interpretation placed by the Unemployment Commission on the superintendent's powers, given him by chapters 230 and 231, was far too limited. Of course the superintendent has the statutory power only to recommend dismissals, and the final decision to discharge abides with the school board. Section 231.36(6). Clearly there were procedures available to the appellant, of which he was aware, permitting him to grieve his resignation before the school board. See Rules 6GX61-3.13, 6GX61-3.14, and 6GX61-3.15P of the Suwannee County School Board. Nevertheless, claimant testified the reason he did not go before the board was because he sincerely believed it would have been an act of futility. The appeals referee himself made a finding to that effect, which the Commission on appeal discarded as only "thinly veiled conjecture." The finding, however, is supported by the record. The superintendent admitted that his personnel recommendations were routinely approved by the board.[1] Indeed, before LeDew had been asked to resign on March 4, 1982, the school board had on the month preceding voted to delete the claimant's job for the coming academic year. Additionally, a school board member testified that the claimant's appearance before the board would have availed him nothing: "Because you and I know that the attitude prevailing in the county office was one of all the administrators, get rid of LeDew. You know that. You know that three or more board members [out of the total number of five board members] had already made up their mind before it was recommended." Can it be said then that one has voluntarily abandoned his employment when he resigns in the face of an order to resign, and then fails to pursue administrative remedies which the record reveals would be a fruitless avenue of relief? We think not.
On more than one instance this court has looked beyond the de jure authority vested in the superintendent and examined instead the factual relationship existing between the superintendent and the board. For example, we have refused to hold a school board immune from an unfair labor practice charge when it argued that it acted in good faith on a superintendent's recommendation not to rehire a non-tenured refrigeration mechanic. We observed that when the board routinely accepted the superintendent's hiring recommendations, it was sufficient proof of an unfair labor practice if the recommendations were tainted by the impermissible motives of the superintendent or other responsible subordinate. See Columbia County Board of Public Instruction v. Public Employees Relations Commission, 353 So.2d 127 (Fla. 1st DCA 1977). In another case, we sustained a trial court's order permitting a blind person the opportunity to demonstrate that he could function as a teacher in physical education at public school, and rejected the school board's argument that its refusal to hire the applicant was justified because the superintendent subordinate had not recommended the applicant's employment, holding, under the circumstances, that both "the board and superintendent share ... vicarious responsibility for any unlawful purpose of the subordinate." Zorick v. Tynes, 372 So.2d 133, 142 (Fla. 1st DCA 1979). Again, in Hollis v. School Board of Leon County, 384 So.2d 661, 664 (Fla. 1st DCA 1980), we recognized that
[t]he district school system is a hydra-headed organization whose day-to-day operations are overseen by its chief administrator, the school superintendent, but *1223 whose control is technically vested in the school board. Dual control, then, is placed in both the superintendent and the school board for the operation of the administration of the district school system in Florida.
It is not enough, then, for the school board to insulate itself from the impermissible motives of its superintendent by arguing that the superintendent has no legal authority to discharge when it routinely accepts his personnel recommendations. As we stated in Zorick v. Tynes: "Where ... the board and superintendent have effectively delegated recommending power to a subordinate, ..., and that subordinate is shown to have exercised de facto power to employ, the board and superintendent share, for the purposes of an action such as this, vicarious liability for any unlawful purpose of the subordinate." 372 So.2d at 142.
The Commission appears to have been persuaded by Board of County Commissioners, Citrus County v. Florida Department of Commerce, 370 So.2d 1209 (Fla. 2d DCA 1979), in deciding to remand the case to the hearing officer for further findings on the question of whether the employee could be said to have voluntarily resigned his position without good cause attributable to the employer. There the court held that "[w]hen an employee, in the face of allegations of misconduct, chooses to leave his employment rather than exercise his right to have the allegations determined, such action supports a finding that the employee left his job without good cause." Id. at 1211. The operative word in the opinion is, however, "chooses". The word "implies the exercise of judgment in settling upon a thing or course from among those offered... ." Webster's New World Dictionary of the American Language (2d College ed. 1980). By its very nature, the term connotes some volitional decision. In the context of unemployment appeals, the test for determining whether an employee left his employment without good cause attributable to his employer is stated as follows: "To voluntarily leave employment for good cause, the cause must be one which would reasonably impel the average able-bodied qualified worker to give up his or her employment." Uniweld Products, Inc. v. Industrial Relations Commission, 277 So.2d 827, 829 (Fla. 4th DCA 1973) (e.s.). There was sufficient evidence that a voluntary choice without good cause attributable to the employer was exercised by the claimant in Board of County Commissioners, Citrus County in that the employee was informed at a county commission meeting of certain improprieties that had been alleged against him, and his rights under the county's personnel rules were explained to him. The county attorney, moreover, suggested that the commission consider suspending him, at which point the employee asked to speak, saying: "I come before the board on my own volition and say, gentlemen, I am guilty, fire me now, and end it." On this and other evidence the appeals referee found that the employee was not discharged by the county for misconduct, and he was therefore ineligible for unemployment benefits because he had voluntarily left his employment without good cause attributable to the employer. On appeal, the Board of Review held that the referee erred in finding that Britt had voluntarily left his employment. The Board thus displaced a factual finding made by the deputy on which there was competent, substantial evidence, and its decision in turn was reversed by the appellate court.
No such evidence of a volitional choice exists in the present case. The appeals referee below inconsistently determined that the claimant voluntarily resigned his job for the reason that the school superintendent demanded his resignation. His determination of a voluntary resignation was made by reference to the school superintendent's limited de jure authority to suspend, but not to discharge, without consideration of the superintendent's de facto powers. Under federal case law appellant's resignation would be considered a constructive discharge, meaning that a person may be deemed discharged if the words and actions of the employer *1224 would logically lead a prudent person to believe his tenure had been terminated. NLRB v. Trumball Asphalt Company, 327 F.2d 841 (8th Cir.1964); Jack Thompson Oldsmobile v. NLRB, 684 F.2d 458 (7th Cir.1982); Young v. Southwestern S & L Association, 509 F.2d 140 (5th Cir.1975).
The final order of the Unemployment Appeals Commission is reversed with directions that it grant to appellant unemployment benefits during the applicable period of time involved.
BOOTH, J., concurs.
WENTWORTH, J., dissents with opinion.
WENTWORTH, Judge, dissenting.
I respectfully dissent because I am unable to distinguish the decision here from that reached in Board of County Commissioners, Citrus County v. Florida Department of Commerce, 370 So.2d 1209 (Fla. 2d DCA 1979). The majority acknowledges that appellant was aware of procedures available to him by which he could grieve his controversy. Likewise, appellant was aware that the superintendent did not have authority to demand his resignation. Under these circumstances, cases that look beyond the de jure authority of the superintendent are not pertinent. What is pertinent in my opinion is that in this case, as in Citrus County, appellant was fully aware of his right to have the allegations against him determined administratively and declined to exercise that right. While the referee indicated that claimant would probably have been unsuccessful in defending himself before the school board, he also noted that one of the board members encouraged appellant to try. In any event, I fail to see the importance of appellant's subjective belief regarding the outcome of a confrontation with the board when the conceded fact was that he knew that only the board had the authority to demand his resignation. The standard is not, of course, whether there is competent substantial evidence supporting a result contrary to that reached by the appeals referee and the commission, but whether there is competent substantial evidence to support their findings. In my opinion, the order below is so supported, and I would affirm.
NOTES
[1] The record discloses the following:

REFEREE: Have they ever bucked you on personnel?
STANKUNAS: A few, but they always went with my recommendations. I would say its 100% right now on personnel, when I recommend somebody. It's be sin  two years. It's been 100% with the board. Not  not going 5-0, but may be 4-1, 3-2, but 
REFEREE: Oh, okay.
SLAUGHTER: Would  for clarification, what he's talking about is the vote of the board.
REFEREE: I understand.
SLAUGHTER: There are five members on the board.