555 So.2d 1225 (1989)
Karen KRUEGER, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION, and Department of Health and Rehabilitative Services, Appellees.
No. 88-03159.
District Court of Appeal of Florida, Second District.
September 8, 1989.
*1226 Cathy L. Lucrezi of Florida Rural Legal Services, Inc., Fort Myers, for appellant.
John D. Maher of Unemployment Appeals Com'n, Tallahassee, for appellee, Com'n.
Eugenie G. Rehak, Sr. Atty., Dept. of Health and Rehabilitative Services, Fort Myers, for appellee, HRS.
PER CURIAM.
Affirmed.
FRANK, A.C.J., and HALL, J., concur.
ALTENBERND, J., dissents with opinion.
ALTENBERND, Judge, dissenting.
Ms. Krueger appeals the order of the Unemployment Appeals Commission which affirmed the decision of the appeals referee. The referee had determined that Ms. Krueger was disqualified for unemployment compensation benefits because she voluntarily left her employment without good cause attributable to her employer. I respectfully dissent because I believe that the referee failed to apply the correct rule of law in this case. Although the referee may have correctly determined that Ms. Krueger voluntarily left her employment, he either misapplied the law or made insufficient findings of fact in determining that she left without good cause attributable to her employer.
The Department of Health and Rehabilitative Services (HRS) hired Ms. Krueger as a social worker in May 1985. In August 1986, she was transferred to the position of admission and discharge coordinator. In August and October 1987, she received unsatisfactory performance appraisals from her supervisors. After the second poor performance appraisal, HRS notified her that it was considering her termination. At that time, she attended a pretermination hearing. As a result of that hearing, she was placed on a corrective action plan in December 1987. She was able to meet the terms of the corrective action plan, but shortly thereafter, she again fell below the acceptable performance levels.
On April 4, 1988, Ms. Krueger's supervisors once again presented her with an unsatisfactory performance appraisal. This third unsatisfactory appraisal again recommended that she be terminated. Before the appraisal was presented to Ms. Krueger, it was reviewed and approved by her supervisor's supervisor, Ms. Mennella.
On April 26, 1988, Ms. Mennella sent a certified letter to Ms. Krueger notifying her that HRS was "considering taking disciplinary action of dismissal" against her. The form letter stated that the "anticipated effective date" of her dismissal would be June 6, 1988. The letter also stated that HRS was "sincere in its desire to reduce the risk of error in taking this disciplinary action," and allowed her five work days in which to submit a written request for a pretermination hearing to refute or explain the charges which had been made against her. The request was to be submitted to Ms. Mennella, and the hearing was to be conducted by Ms. Mennella. After considering the matter overnight, Ms. Krueger submitted a letter of resignation on the following day and asked that her last day of employment be May 12, 1988.
During the initial determination of Ms. Krueger's unemployment compensation claim, an interviewer for the Division of Unemployment Compensation took fact finding statements from both Ms. Krueger and Ms. Mennella. Ms. Mennella stated that Ms. Krueger would have been terminated even if she had attended the pretermination hearing. Ms. Mennella emphasized Ms. Krueger's unsatisfactory appraisals and the difficulties which Ms. Krueger had experienced with HRS clients. The Division of Unemployment Compensation initially denied Ms. Krueger benefits on grounds of misconduct connected to her work, not on grounds of voluntarily leaving her employment.
When Ms. Krueger appealed her denial of benefits, the appeals referee made no finding of misconduct. I agree with that result. The record reflects that Ms. Krueger had problems communicating at a layman's level with HRS clients, and that *1227 she had personality conflicts with her supervisors. It does not support the type of misconduct which would have disqualified her for benefits. Daniels v. Unemployment Appeals Comm'n, 531 So.2d 1047 (Fla. 2d DCA 1988); Lewis v. Unemployment Appeals Comm'n, 498 So.2d 608 (Fla. 5th DCA 1986). Thus, had the appeals referee made findings of misconduct, such findings would have been without support in either evidence or law.
The appeals referee made brief findings of fact and conclusions of law. His conclusions of law state:
The evidence clearly reveals that the claimant was not discharged but voluntarily left her employment. She decided to do so upon being notified that her employer was considering taking disciplinary action against her because of her unsatisfactory job performance. Claimant had an opportunity to meet with her employer and discuss any disciplinary action forthcoming but she failed to exercise that right because after going through somewhat similar procedures in the past, she did not believe that it would serve any useful purpose, instead chose to leave her employment. The employer had not changed her working agreement nor did anything to cause her to leave. She is responsible for being unemployed. Accordingly, it must be concluded that claimant's leaving of employment was without good cause attributable to her employer.
On appeal, neither the Commission nor this court has the authority to modify the appeal referee's findings of fact if they are supported by substantial, competent evidence. Verner v. Unemployment Appeals Comm'n, 474 So.2d 909 (Fla. 2d DCA 1985). It is this court's function, however, to assure that the correct rules of law were applied. LeDew v. Unemployment Appeals Comm'n, 456 So.2d 1219 (Fla. 1st DCA 1984).
Florida courts have repeatedly held that the issues of whether a resignation is both voluntary and without good cause attributable to the employer must be examined from the standard of the "the average, able-bodied, qualified worker." Marcelo v. Fla., Dep't of Labor & Unemployment Sec., 453 So.2d 927, 929 (Fla. 2d DCA 1984); Uniweld Products, Inc. v. Indus. Relations Comm'n, 277 So.2d 827 (Fla. 4th DCA 1973). In construing the concepts of voluntariness and good cause, it is important to remember that Florida's Unemployment Compensation Law is remedial, humanitarian legislation, and that it must be liberally construed in favor of claimants. § 443.031, Fla. Stat. (1987); Gulf County School Bd. v. Washington, 544 So.2d 288 (Fla. 1st DCA 1989); Baeza v. Pan Am./Nat'l Air Lines, Inc., 392 So.2d 920 (Fla. 3d DCA 1980); City of Fort Lauderdale v. Fowler, 355 So.2d 159 (Fla. 4th DCA 1978); Williams v. Fla., Dep't of Commerce, 326 So.2d 237 (Fla. 3d DCA 1976).
The record supports Ms. Krueger's position that she believed her June 6, 1988, termination was inevitable, and that there was nothing more she could tell Ms. Mennella at yet another pretermination hearing which would have prevented her termination. From her perspective, the decision to resign three weeks early allowed her to preserve a portion of her self-respect, avoid the permanent stigma of a "firing," and avoid one last exercise of fruitless bureaucracy.
In order to deny benefits, the appeals referee needed to make findings of fact and conclusions of law that, under these circumstances, the second pretermination hearing provided a reasonable opportunity to Ms. Krueger to save her employment. It is apparent from the above-quoted conclusions that the referee believed Ms. Krueger was barred from recovering benefits merely because she waived her pretermination hearing. If the referee had reviewed this case under the correct rule of law, I believe there is a substantial probability that he would have reached the opposite conclusion.
The record in this case admittedly contains evidence suggesting a slight possibility that Ms. Krueger could have salvaged her job through the pretermination hearing. On the other hand, both Ms. Krueger and Ms. Mennella knew that the notice of *1228 intended termination had already been approved by Ms. Mennella, and that Ms. Mennella would conduct the hearing. While Ms. Mennella's testimony indicated that she was willing to listen to Ms. Krueger, Ms. Krueger truly had nothing to add at the hearing other than the points which they had already discussed. Significantly, Ms. Mennella, when given an opportunity to do so, never withdrew her initial statement that Ms. Krueger would have been terminated even if she had attended the hearing.
It is important to consider Ms. Kreuger's options when she received her notice of intended termination. She appears to have had four options. First, she could have done nothing. In that event, she would not have gone to the hearing and would unquestionably have been terminated. Under this option, she would have received benefits. Second, she could have gone to the hearing and told Ms. Mennella that she had nothing new to say. Again, she almost certainly would have been terminated and she would have received benefits. Third, she could have gone to the hearing and vigorously requested one more chance. Since Ms. Mennella indicated in her statement that Ms. Kreuger would have been terminated anyway and there was no basis to fire Ms. Kreuger for misconduct, there still appears a very high probability that she would have been terminated and would have collected benefits. Only by taking the fourth option of resigning to avoid the embarrassment of the hearing does it appear that she loses her benefits. Although there may be some certainty in requiring employees to exhaust even frivolous hearings, this solution does not promote the objectives of the Unemployment Compensation Law.
As discussed earlier, this is not a case in which Ms. Krueger was disqualified due to misconduct. Thus, she could have been disqualified only if she had "voluntarily left [her] employment without good cause attributable to [her] employer." § 443.101(1)(a), Fla. Stat. (1987). This statutory disqualification requires a twofold analysis. The appeals referee must decide whether the employee left "voluntarily." If the employee left voluntarily, the appeals referee must then decide whether the employee left without good cause attributable to the employer. Obviously, these two concepts are interrelated.
A decision to quit is "voluntary" if it is: Brought about by one's own free choice; given or done of one's own free will; freely chosen or undertaken.
Webster's New World Dictionary 1496 (3d College ed. 1988); see also Bunn v. N.C. State Univ., 70 N.C. App. 699, 321 S.E.2d 32 (1984), review denied, 313 N.C. 173, 326 S.E.2d 31 (1985).[1] In this case, the referee's determination that Ms. Krueger's leaving was voluntary is supported by substantial, competent evidence. See McLaughlin v. Fla., Dep't of Natural Resources, 526 So.2d 934 (Fla. 1st DCA 1988). Ms. Krueger was not forced or coerced into resignation, and there is no duress or undue influence involved in this case. At least for the period between May 12 and June 6, 1988, her quitting was voluntary. See Johnston v. Fla., Dep't of Commerce, 340 So.2d 1229 (Fla. 4th DCA 1976); Seaberry v. W.T. Bridgers Contract Labor, 91 N.C. App. 499, 372 S.E.2d 348 (1988).
The legal issue not clearly resolved by the appeals referee is whether Ms. Krueger voluntarily resigned for "good cause." Good cause has been defined as "a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." Bunn, 321 S.E.2d at 34. In re Clark, 47 N.C. App. 163, 266 S.E.2d 854 (1980); See Gulf County School Bd. The above-described definition analyzes good cause both objectively and subjectively. If a reasonable person would regard Ms. Krueger's reasons for resignation as valid reasons attributable to the employer, then the objective test has been *1229 met. Ms. Krueger must also establish that her resignation was not due to some subjective unwillingness to work on her own part.
Four prior cases are helpful in analyzing this area of Florida law. In Quick v. North Central Florida Community Mental Health Center, 316 So.2d 301 (Fla. 1st DCA 1975), a registered nurse submitted a letter of resignation because she was informed that her work was unsatisfactory and that she could either resign or go through the process of being terminated. The claims examiner denied benefits and that decision was affirmed. Ms. Quick, however, had not received multiple adverse appraisals and had not previously gone to a pretermination hearing. Unlike Ms. Krueger's situation, there is no evidence that Ms. Quick's hearing would have been conducted by a supervisor who intended to fire her whether she came to the hearing or not. Thus, in Quick, the appeals referee apparently determined that Ms. Quick failed the objective "good cause" test.
In Board of County Commissioners, Citrus County v. Florida Department of Commerce, 370 So.2d 1209 (Fla. 2d DCA 1979), this court reinstated the decision of an appeals referee who denied benefits to a county employee. In that case, the county employee stated at a public meeting that he was guilty of various allegations and asked that he be fired. The employee persisted in these efforts, even though the county attorney discouraged him. In Citrus County, the county employee's actions were not only voluntary, but also failed both the objective and the subjective elements of "good cause."
In LeDew v. Unemployment Appeals Commission, 456 So.2d 1219 (Fla. 1st DCA 1984), a school employee resigned when the school superintendent requested his resignation. Even though the superintendent may not have had ultimate authority to fire the employee, the First District held that the superintendent's request for a resignation would "logically lead a prudent person to believe his tenure had been terminated." Thus, the First District granted unemployment benefits to the school employee because he did not voluntarily leave his employment without good cause. Ms. Krueger's case is only a small step from Mr. LeDew's case. Ms. Krueger was not asked to resign, but she was placed in a situation where a reasonable employee could feel impelled to give up employment. See Carlson v. Job Serv. N.D., 391 N.W.2d 643 (N.D. 1986).[2] Thus, at the appellate level we should not order unemployment benefits as were ordered in LeDew, but we should remand this case for the further necessary findings of fact and conclusions of law. § 120.68(13), Fla. Stat. (1987).
Finally, in Glenn v. Unemployment Appeals Commission, 516 So.2d 88 (Fla. 3d DCA 1987), the Third District affirmed the Commission's order denying benefits to an employee who voluntarily quit when faced with charges of misconduct. The court quoted from the Commission's order which stated:
Whenever feasible, an individual is expected to expend reasonable efforts to preserve his employment. The average, prudent person in the claimant's situation would have made a good faith effort to defend himself against a discharge recommendation when afforded that opportunity. In allowing his dismissal to be implemented forthwith because he would not appropriately acknowledge or respond to the disciplinary action report recommendation, the claimant chose not to avail himself of an accessible avenue by which he might have retained his employment.
Glenn, 516 So.2d at 89-90. Unlike Glenn, the referee in Ms. Krueger's case did not find that the average, prudent person would have attended her second pretermination hearing.
In this case, Ms. Krueger's evidence clearly establishes that her resignation was not based upon any unwillingness to work. It is obvious that she valued her job and only reluctantly resigned. She also presented evidence upon which a finder of fact could conclude that an ordinary, reasonable employee would have regarded the *1230 second termination notice as an objectively valid cause to submit a resignation. The appeals referee focused entirely upon the availability of the pretermination hearing, without determining the meaningfulness of the hearing. He made no findings of fact or conclusions of law that the hearing offered a reasonable opportunity to salvage employment.
Ms. Krueger argues that the price she should pay for her resignation in the face of this second pretermination hearing is a period of voluntary unemployment between May 12, 1988, and June 6, 1988. This limited forfeiture of benefits is authorized by Johnston. Our decision places a far higher price upon Ms. Krueger's small effort to salvage her self-respect. Public policy should encourage "well-intentioned employers to allow the unsuitable employee the dignity of resignation." In re Werner, 44 N.C. App. 723, 729, 263 S.E.2d 4, 7 (1980); Dobbins v. Everett, 2 Ark. App. 254, 620 S.W.2d 309 (1981). I can understand denying benefits when a pretermination hearing offers a reasonable opportunity to salvage employment. The appeals referee, however, did not make this finding and the record does not otherwise support it. Thus, I would reverse and remand to require the appeals referee to expressly consider this legal issue.
NOTES
[1] Some cases use a more liberal definition of "voluntary." See Fiskewold v. H.M. Smyth Co., 440 N.W.2d 164 (Minn. Ct. App. 1989); Poteat v. Employment Sec. Comm'n of N.C., 319 N.C. 201, 353 S.E.2d 219 (1987); Roberts v. Unemployment Compensation Bd. of Review, 61 Pa. Cmwlth. 21, 432 A.2d 646 (1981). I am inclined to believe that the broader issues of constructive discharge addressed by the more liberal definition can be analyzed more accurately under the concept of good cause.
[2] Since Carlson, the North Dakota Legislature revised its unemployment compensation statutes so that, unlike Florida, an employee who leaves in anticipation of a layoff or discharge is deemed to have left voluntarily. 1987 N.D.Sess. Laws ch. 598, § 1.