704 So.2d 714 (1998)
Dina J. GROSSMAN, Appellant,
v.
JEWISH COMMUNITY CENTER OF GREATER FORT LAUDERDALE INC. and Florida Unemployment Appeals Commission, Appellees.
No. 96-3491.
District Court of Appeal of Florida, Fourth District.
January 7, 1998.
*715 Jeralyn S. Adelman, Plantation, and Carla Reece Gettlemen, Pembroke Pines, for appellant.
William T. Moore, Tallahassee, for appellee Unemployment Appeals Commission.
POLEN, Judge.
Dina Grossman, an unemployment compensation claimant, who worked for appellee, Jewish Community Center of Greater Fort Lauderdale, Inc. (JCC), quit after she was given a negative evaluation and, per the appeals referee's findings, verbally abused. The referee found that she was entitled to benefits on the basis that she resigned for just cause attributable to her employer, and that her failure to go through the JCC's formal, four-step grievance procedure would not be required since the employer's conduct was so "heinous." The Unemployment Appeals Commission (UAC) reversed the award of benefits, finding that the referee misapplied the applicable law. We reverse the UAC's ruling.
Grossman was employed as a receptionist at the JCC from January 17, 1995, until February 15, 1996, when she resigned following an evaluation by her two supervisors. On March 13, 1996, Grossman filed a claim for unemployment compensation. On April 8, 1996, it was determined that Grossman was entitled to receive unemployment compensation benefits, which were to be charged to the JCC's account. The JCC appealed this determination, and as a result, a hearing was held before an appeals referee on May 13, 1996.
At the hearing, Grossman claimed she voluntarily left her employment with good cause attributable to the JCC. She alleged that she resigned due to the conduct and comments made during her evaluation by her two supervisors. She testified that she had endured other abusive treatment for one year, and indicated a particular incident where her supervisor screamed at and berated her in front of others. However, she testified that the treatment she received during the evaluation was the "straw that broke the camel's back."
The evidence conflicted regarding what was said by the parties during the evaluation. The referee concluded that, in the evaluation, the two co-executives verbally abused Grossman, *716 and that their remarks were unreasonable. Of key importance, the referee held:
Although there was a grievance provision, the comments of the two co-executives to the claimant were so heinous that an average employee of reasonable sensibilities would feel degraded and humiliated at being the direct recipient of such comments.
As a result, she concluded that Grossman voluntarily quit her job with good cause attributable to her employer, and that she was entitled to receive unemployment compensation benefits.
The JCC then appealed the referee's decision to the UAC. The UAC reversed the referee's decision, stating that Grossman was disqualified from receiving unemployment compensation because she had voluntarily left her job without good cause attributable to her employer. Grossman appeals from that order.

Standard of Review
The legal issue in this appeal centers on whether the UAC wrongfully denied Grossman unemployment benefits to which the unemployment appeals referee determined she was entitled. As the purpose of Florida's Unemployment Compensation Law is remedial, the law generally must be liberally construed in favor of claimants. § 443.031, Fla. Stat. (1995). In this regard, an employee is disqualified from unemployment benefits only if she has voluntarily left her work without good cause attributable to her employer. § 443.101(1)(a), Fla. Stat. (1995). Whether that employee left her job voluntarily and without good cause is a question of fact within the province of the unemployment appeals referee. See Verner v. Unemployment Appeals Comm'n, 474 So.2d 909, 911 (Fla. 2d DCA 1985). As trier of fact, the referee is responsible for weighing and resolving conflicting evidence and judging credibility, having witnessed the demeanor of the parties, is deemed to be in the best position to make these credibility determinations. Schneier v. Fla. Unemployment Appeals Comm'n, 595 So.2d 235, 236 (Fla. 4th DCA 1992).
The UAC may reverse the referee's findings of fact, however, where there is no competent, substantial evidence in the record to support the referee's decision. § 120.57, Fla. Stat. (1995); see also Smith v. Fla. Unemployment Appeals Comm'n, 588 So.2d 324, 324 (Fla. 4th DCA 1991). Overall, the UAC cannot reweigh the evidence and substitute its findings for those of the referee. Studor Inc. v. Duren, 635 So.2d 141, 142 (Fla. 2d DCA 1994). In reviewing a substituted conclusion by the UAC, this court must assure that the correct rules of law were applied. See Public Employees Relations Comm'n v. Dade Co. Police Benevolent Assoc., 467 So.2d 987, 989 (Fla.1985)(holding that a reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence).

Legal Test of Good Cause
Whether an employee's resignation is both voluntary and without good cause attributable to the employer must be examined from the standard of the "average, ablebodied, qualified worker." Uniweld Products, Inc. v. Indus. Relations Comm'n, 277 So.2d 827, 829 (Fla. 4th DCA 1973). In other words, courts focus on whether the average, able-minded, qualified worker would have given up her employment under the same circumstances endured by the departing employee. Krueger v. Fla. Unemployment Appeals Comm'n, 555 So.2d 1225, 1227 (Fla. 2d DCA 1989). Courts have defined good cause as "a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." Id. at 1228. In determining whether such good cause exists, courts have held that an employer's failure to provide its employees with a tolerable work environment is good cause for leaving employment attributable to the employer. See Lovett v. Fla. Unemployment Appeals Comm'n, 547 So.2d 1253, 1254 (Fla. 1st DCA 1989); Wilson v. Fla. Unemployment Appeals Comm'n, 604 So.2d 1274 (Fla. 4th DCA 1992). A tolerable work environment includes the employer refraining from inflicting verbal abuse upon the employee. See Gollet Enters. E., Inc. v. Fla. Unemployment *717 Appeals Comm'n, 630 So.2d 1166 (Fla. 4th DCA 1993)(holding verbal abuse by the employer provided good cause for the employee to resign voluntarily).
The referee, relying on Gollet, found that the verbal abuse inflicted upon her by her immediate supervisors created an intolerable work environment which impelled her to resign. The UAC rejects the referee's findings of fact below as "conclusory" and further argues that Gollet is distinguishable because the conduct of the employer in that case was "far more egregious" than the alleged conduct of Grossman's supervisors. In reaching this conclusion, the UAC is reweighing and substituting its findings for those already made by the referee. This is improper. Studor, supra. The referee specifically resolved factual disputes in favor of Grossman, and the record supports those findings.

Availability of Internal Grievance Procedures
Alternatively, the UAC argues that, even if the average worker would have resigned as did Grossman under the same circumstances, because Grossman failed to utilize the company's established grievance procedures before resigning, her leaving still cannot be considered to result from good cause attributable to her employer. It contends that, when afforded the opportunity, the average, prudent person in Grossman's situation would have made a good faith effort to air her grievance publicly and/or defend herself before resigning. See Glenn v. Florida Unemployment Appeals Comm'n, 516 So.2d 88 (Fla. 3d DCA 1987); Klesh v. Unemployment Appeals Comm'n, 441 So.2d 1126 (Fla. 1st DCA 1983); Quick v. North Cent. Fla. Community Mental Health Ctr., 316 So.2d 301 (Fla. 1st DCA 1975). The UAC overlooks that these cases urge employees to exhaust the company's internal grievance procedures before resigning when feasible.
The referee below found that the JCC's grievance procedure was not feasible. The first two steps of that procedure would have required Grossman to air her complaints to the same supervisors who abused her. While there is a slight possibility that the remaining two steps of the process may have salvaged her employment, as the court in Krueger noted, "[a]lthough there may be some certainty in requiring employees to exhaust even frivolous [procedures ] ..., this solution does not promote the objectives of the Unemployment Compensation Law." Krueger, 555 So.2d at 1228.
REVERSED and REMANDED for reinstatement of the appeals referee's award of benefits.
GLICKSTEIN and GUNTHER, JJ., concur.