BENTON, Judge,
dissenting.
I respectfully dissent. Terry L. Brainard, who worked for Willa Merriott Realty, Inc., as a bookkeeper, quit voluntarily on September 10, 1996, after refusing to take part in something she says she thought was illegal and unethical. Her pro se brief recounts her version of events:
In August Mr. Clark an owner on Willa Merriott Realty’s rental program asked for his balance because he was unhappy. He wanted to pay off his balance and quit the rental program. I told him the balance and he paid it. Since he went off the rental program, he did not receive any cleaning services for the last stay in his unit. Therefore, he did not owe the $38.00 cleaning fee that the computer automatically bills after each stay. I deleted the charge leaving a $38.00 credit balance for his September 10 statement. On September 9, I was looking over the statements, getting ready to cut checks and mentioned to Willa Merriott that Mr. Clark had a credit balance. She said to research it and find out why but said, “We are NOT cutting him a check.” She went home and I stayed to cut the checks so she could sign them the next morning. I researched Mr. Clark’s account and found the $38.00 to be because of the cleaning fee that was deleted because we did not clean his unit. The housekeepers did not bill us for the unit. We simply owed him the $38.00, so I cut him the check.
The morning of September 10 I gave Willa Merriott the stack of owners’ checks to sign and got the statements ready to mail. Willa came to my office and asked me why I cut a check to Mr. Clark? I said we owe him the $38.00 from when we did not clean his unit. She said, “Void the check and reprint his statement with a zero balance.” I said, “I can’t do that.” She said, “I don’t want to look stupid. We told him his balance and he paid it.” I said, “That was his balance. Balances change. It’s not stupid. We owe him the money back.” She said, “I am the owner, I think it looks stupid and I said to void the check and reprint the statement!” She raised her voice and accused me of trying to slip the check by her. At this point I decided I’d rather leave than make up a charge to get his statement to have a zero *802 balance. Although I liked my job, I abhor dishonesty and realized this was an illegal act. I said, “I hate this place. I think I need to quit.” She said, “Just void the check!” for the third time. I didn’t say anything else. I got my purse and crackers and took her key off my keyring and laid it on the counter. As I walked out the door I said, “You are keeping the owners money!” Mr. Clark happens to be an attorney in Mississippi and told me he did get his $38.00 check with his statement. She had to mail it to him. She knew it was his money and she couldn’t change the statement illegally. But she expected me to do it. I know I did the right thing.
I was unemployed for 1% weeks and have never quit a job without giving 2-3 weeks notice. But I know I did the right thing. As a bookkeeper I am in a position where I can see people who do business honestly or dishonestly.... When she told me to void the check I knew I couldn’t do it. I am a very honest person and I truly suffered because of it. This was a very stressful time for me with no full-time job. I thought I would lose my apartment and told my roommate I might have to move.
After, a telephonic hearing, the referee found as follows:
The claimant informed the president that there was a $38 balance owed [Mr. Clark]. The president informed the claimant that they did not owe the customer any money and asked her to research the situation. The president informed the claimant not to send the customer a check. The next morning, the president was going through a stack of checks to sign and noticed the customer had been written a $38 cheek. The president went to the claimant and asked her why she cut the check. The president instructed the claimant to void the check and redo the balance statement
(Emphasis supplied.) The referee found that claimant voluntarily quit the job, “rather than void the check as instructed and redo the customer statement,” but concluded, as a matter of law, that the president’s request to void the check was not shown to be illegal or unethical, on grounds Ms. Brainard “did not know whether the president would send the customer a check. She did not know what the intentions of the president were based on her request to void the check.”
Section 443.101(l)(a)l, Florida Statutes (1997), defines “good cause” as “only such cause as is attributable to the employing unit or which consists of illness or disability of the individual requiring separation from his or her work.”
Whether an employee’s resignation is ... without good cause attributable to the employer must be examined from the standard of the “average, able-bodied, qualified worker.” Uniweld Products, Inc. v. Indus. Relations Comm’n, 277 So.2d 827, 829 (Fla. 4th DCA 1973). In other words, courts focus on whether the average, able-minded, qualified worker would have given up her employment under the same circumstances endured by the departing employee. Krueger v. Fla. Unemployment Appeals Comm’n, 555 So.2d 1225, 1227 (Fla. 2d DCA 1989). Courts have defined good cause as “a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work.” Id. at 1228. In determining whether such good cause exists, courts have held that an employer’s failure to provide its employees with a tolerable work environment is good cause for leaving employment attributable to the employer. See Lovett v. Fla. Unemployment Appeals Comm’n, 547 So.2d 1253, 1254 (Fla. 1st DCA 1989); Wilson v. Fla. Unemployment Appeals Comm’n, 604 So.2d 1274 (Fla. 4th DCA 1992). A tolerable work environment includes the employer refraining from inflicting verbal abuse upon the employee. See Gollet Ent. E., Inc. v. Fla. Unemployment Appeals Comm’n, 630 So.2d 1166 (Fla. 4th DCA 1993)(holding verbal abuse by the employer provided good cause for the employee to resign voluntarily).
Grossman v. Jewish Community Ctr. of Greater Fort Lauderdale, Inc., 704 So.2d 714, 716-717 (Fla. 4th DCA 1998). An employee who quits to avoid engaging in illegal or unethical conduct leaves employment for *803 “cause ... attributable to the employing unit.”
The referee found that Ms. Brainard knew one of her employer’s customers was owed $38 and resigned rather than alter his account to state otherwise. Ms. Brainard gave a legally sufficient cause attributable to her employer as the'reason for terminating her employment. At the very least, this matter should be sent back to the Commission so that the order under review can be supplemented by additional findings of fact.
Without a transcript, the findings of fact must be presumed correct, as far as they go. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979). The referee failed, however, to make adequate findings or draw any conclusions of law regarding the president’s request that Ms. Brainard alter the customer’s balance statement. The order finds that she left her job “rather than ... redo the customer statement,” but does not evaluate or even mention the basis for her objection to redoing the statement. While the'order rejects the contention that voiding the cheek was illegal or unethical, it does not address Ms. Brainard’s contention that misstating the account would have been illegal and unethical.