735 So.2d 563 (1999)
America M. NOVAS, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and St. Kevin School, Appellees.
No. 99-388.
District Court of Appeal of Florida, Third District.
June 9, 1999.
Rehearing Denied July 14, 1999.
*564 Andrew B. Rosenblatt, Miami, for appellant.
J. Patrick Fitzgerald, P.A. and Roberto J. Diaz, Miami, for appellees.
Before GERSTEN, GODERICH, and GREEN, JJ.
PER CURIAM.
This is an appeal from an order of the Unemployment Appeals Commission affirming the denial of unemployment benefits to the appellant, America M. Novas. The commission affirmed the appeal referee's legal conclusion that Novas was disqualified from receiving such benefits pursuant to section 443.101, Florida Statutes (1997), because she had been discharged from St. Kevin Catholic School, the appellee and Novas' employer, for misconduct in connection with work. Although we conclude that the competent, substantial evidence adduced at the hearing fails to support this conclusion, we nevertheless affirm the denial of benefits where the evidence reflects that Novas left her employment voluntarily without good cause attributable to the school.
An employee who voluntarily leaves work without good cause attributable to the employer or who is discharged by the employer for misconduct connected with work will be disqualified from receiving unemployment benefits. See § 443.101, Fla. Stat.; see also Amato v. State, Unemployment Appeals Comm'n, 648 So.2d 284, 285 (Fla. 4th DCA 1995). In Uniweld Prods., Inc. v. Industrial Relations Comm'n, 277 So.2d 827, 829 (Fla. 4th DCA 1973), the court defined good cause as "one which would reasonably impel the average able-bodied worker to give up his or her employment.".
The findings of fact set forth by the referee, which we must accept since they are supported by competent, substantial evidence in the record, see Ryals v. Unemployment Appeals Comm'n, 722 So.2d 845, 846 (Fla. 2d DCA 1998); Walz v. Reggie's Seafood and BBQ House, Inc., 718 So.2d 861, 862 (Fla. 1st DCA 1998), are as follows:
The claimant was employed by the employer for approximately 18 years as a school principal. In March of 1997, the claimant tendered her written resignation to the Father, indicating that she was tired of administration and she wanted to go back to teaching. Since the Father had just started working at the school, he asked the claimant if she could stay on at least one more year. *565 The claimant tore up her resignation letter and agreed to stay on at least one more year.
On January 8, 1998, the Father brought the claimant into his office and told her that since she was going to be leaving at the end of the 1997-1998 school year, they needed to think of individuals who might replace her as the new principal. He indicated to the claimant that this meeting and their discussion of a new principal was to be kept confidential and not to be discussed with anyone. At no time during this meeting did the claimant indicate she wanted to rescind her resingation [sic].
On January 13, 1998, the Father reviewed a letter that the claimant had sent to the parents of the students indicating that the Father had decided to search for a new principal for the school and she would not be working there during the 1998-1999 school year.
On January 14, 1998, the Father tried to schedule a meeting with the claimant to discuss the letter but was unable to do so. The Father then called an emergency meeting with the faculty advisors, the school association and the Superintendent of Schools for the Archdiocese to discuss the situation.
On January 16, 1998, a meeting was called by the Superintendent of Schools for the Archdiocese for the claimant and the Father to meet with her to discuss the situation. The claimant did not attend the meeting. On January 20, 1998, another meeting was scheduled between the claimant, the Father, the Vicar of Education and the Superintendent of Schools. The claimant, during this meeting, indicated that she was confused and did not know what she wanted to do. The claimant admitted during the meeting that she had spoken with others, including her family, over the course of the first week about her leaving the school and a new principal being selected, though she knew it was to be confidential. The Father then indicated he was going to work with the claimant until the end of her contract on June 30, 1998, but that her contract would not be renewed because of insubordination in her failure to follow his directive in her discussing the selecting of a new principal. The claimant remained at the school until June 30, 1998.
We do not think that these findings support the legal conclusion that Novas was discharged from her employment for misconduct. Nor do they support any conclusion that she voluntarily left the school for good cause attributable to the school. Rather, these findings clearly establish that Novas voluntarily notified her employer of her desire not to continue in her administrative position and to seek a teaching position elsewhere and the school's acquiescence to the same. We do not find her stated reason for departure to be good cause attributable to the school. The fact that Novas may have thereafter defied certain directives of her employer does not alter our conclusion. Novas voluntarily terminated her employment and was permitted to leave on her own terms. Indeed, we think that any misconduct occurring after her voluntary notice of termination was wholly irrelevant to the analysis of this case under section 443.101.
Thus, because Novas voluntarily terminated her employment without good cause attributable to her employer, she is disqualified from receiving unemployment benefits under section 443.101. We therefore affirm the order under review, but for the reasons set forth herein.
Affirmed.