PER CURIAM.
Appellant, who had been city manager of Pahokee for twelve years, resigned because it became apparent to him that the new mayor wanted to terminate him and had the votes to do so. He was denied unemployment benefits because he voluntarily left work and he now appeals. We reverse.
Although appellant served at the commission’s pleasure, and no reasons were needed to terminate him, the city charter required a resolution, which provided for notice and a hearing before the city commission. Before any of that occurred, the new mayor said at a meeting that he wished to terminate appellant and two members of the commission indicated that, although they did not necessarily agree with the mayor’s reasons, they would agree to terminate appellant. Appellant then resigned before the city went through the procedures required by the charter.
At the hearing before the unemployment appeals referee, the mayor testified that when he stated at the meeting that he wished to terminate appellant, he did not give the specific reasons which he would have presented at the meeting required by the charter. Appellant gave the following explanation as to why he resigned rather than go through the formality of a hearing:
The mayor read the letter in the commission chambers, as he said, which had a lot of derogatory comments about my character and what I’ve done with the city. Which I took great offense to after 12 years of working hard for the city. The commissioners each had comments to say after that, and it was very obvious that he had the three votes to fíre me, with two of the other commissioners. Not necessarily for the same reasons, but they indicated that they would go along with it. And so it was obvious there was a three-to-two vote. To go back into a public hearing the comments that were made about me and my character were very upsetting to me and very upsetting to my wife. And I saw no reason to go back into another public hearing and air them all out again, when there was no basis for them and no proof has been shown for any of them. So I felt it was just easier for everybody if I went ahead and resigned. But it was under duress. I had no desire to resign. After 12 years, I wanted to stick around.
The appeals referee found that appellant had left his employment without good cause, stating:
The claimant made a decision to leave before a decision was made by his employer. He may have felt the public airing was disturbing or without point, given his beliefs about the future vote; *1241 however, it can only be determined to have been speculative on his part as to how the vote was to turn. When an employee, in the face of allegations of misconduct, chooses to leave the employment rather than exercise a right to have the allegations determined, such action supports a finding that the employee voluntarily left the job without good cause. Board of County Comm’s, Citrus County v. Florida Dep’t of Commerce, 370 So.2d 1209 (Fla. 2d DCA 1979).
There is no competent substantial evidence to support the finding that the claimant left before a decision was made by his employer. It was undisputed that the claimant could be terminated without any reason, and the essence of appellant’s testimony was that, once the mayor had the three votes, his termination was a foregone conclusion. Significantly, the city presented no testimony to contradict appellant’s position.
The present case is distinguishable from Board of County Commissioners, in that in that case there were specific allegations of misconduct, while in the present case there were no specific charges of misconduct before appellant resigned. Nor did the city claim there was any misconduct at the unemployment compensation hearing.
In Krueger v. Unemployment Appeals Commission, 555 So.2d 1225 (Fla. 2d DCA 1989), Judge Altenbernd explained “good cause” for giving up employment as follows:
Good cause has been defined as “a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work.” The above-described definition analyzes good cause both objectively and subjectively. If a reasonable person would regard Ms. Krueger’s reasons for resignation as valid reasons attributable to the employer, then the objective test has been met. Ms. Krueger must also establish that her resignation was not due to some subjective unwillingness to work on her own part.
Id. at 1228-29. (Citations omitted).
In Grossman v. Jewish Community Center of Greater Fort Lauderdale, Inc., 704 So.2d 714 (Fla. 4th DCA 1998), an employee quit before availing herself of grievance procedures. In that case, two executives who would have been on the grievance panel had verbally abused the employee. The referee found that the grievance procedure did not offer a feasible alternative for the employee. Relying on the dissent in Krueger, we said, “[wjhile there is a slight possibility that the remaining two steps of the process may have salvaged her employment, as the court in Krueger noted, “although there may be some certainty in requiring employees to exhaust even frivolous [procedures] ... this solution does not promote the objectives of the Unemployment Compensation Law.” 704 So.2d at 717 (quoting Krueger, 555 So.2d at 1228).
In the present case there was no evidence of any possibility that appellant could have been retained by the city if he had gone through a hearing. We accordingly reverse because there is no competent substantial evidence to support the finding that appellant left his job voluntarily.
WARNER, KLEIN and POLEN, JJ., concur.