696 So.2d 1283 (1997)
Janice M. TOURTE, Appellant,
v.
ORIOLE OF NAPLES, INC., and Florida Unemployment Appeals Commission, Appellees.
No. 96-02165.
District Court of Appeal of Florida, Second District.
July 16, 1997.
Janice M. Tourte, Pro Se.
John D. Maher, Tallahassee, for Appellee Unemployment Appeals Commission.
BLUE, Judge.
Janice M. Tourte appeals the denial of unemployment compensation benefits after the Unemployment Appeals Commission (Commission) reversed the appeals referee's decision that Ms. Tourte left her employment for good cause attributable to the employer. Because the appeals referee's decision was supported by competent, substantial evidence, we hold that the Commission erred in reversing the award of unemployment compensation benefits.
Ms. Tourte was employed by Oriole of Naples, Inc. She testified that she was hired as the full-time secretary for the construction department at a new residential development. At the time, the project was in its start-up phase. The construction department shared an on-site trailer with the sales department, and Ms. Tourte initially assisted both departments getting things organized. Both Ms. Tourte and the employer's representative testified this arrangement was temporary.
Several months after Ms. Tourte began work, the employer offered her the position of administrative assistant to the sales director. She was told it was her choice whether to take the new position or to remain in the construction department as promised when she was hired. Ms. Tourte advised that she wished to remain in the position for which she was hired. The employer then informed her that she was "too valuable to work in the construction trailer," *1284 and that she would be required to work in sales.
Ms. Tourte protested the change, based primarily on her prior work experience. She had been a construction secretary prior to her employment by Oriole and accepted the Oriole position so that she could continue to work as a construction secretary. She had previously worked in sales and found it to be very stressful. The sales position with Oriole would require her to work in a model home, meeting prospective customers and explaining the project, in addition to normal secretarial duties.
The change from construction to sales would also change Ms. Tourte's work schedule. Construction begins early in the morning and usually the work day ends at 4:30 p.m.. Sales begins later in the day and involves late evening and some weekend work. Ms. Tourte preferred to work early in the day. The new schedule would also conflict with a prior commitment for two evenings a week.
Ms. Tourte continued to protest the change from construction to sales and Oriole continued to insist that she change positions. When there was no longer any question that Ms. Tourte would be removed from the construction secretary position, she resigned.
At the evidentiary hearing, the Oriole representative did not dispute any of Ms. Tourte's testimony. The representative confirmed that Ms. Tourte was hired specifically as a construction secretary. The representative testified that during the start-up process, sales and construction were housed in the same trailer and Ms. Tourte assisted with both functions. However, Ms. Tourte remained primarily the construction secretary. The representative testified that Ms. Tourte's job had become a two-person position and the additional work was creating a stressful situation for Ms. Tourte.
The Oriole representative testified that the company was aware that Ms. Tourte felt strongly about retaining the construction position for which she had been hired rather than transferring to sales. He could not confirm that Ms. Tourte would be denied the construction secretary position, but acknowledged he would not be the person to make the final decision and the person who would make the ultimate decision wanted Ms. Tourte in sales.
Based upon this testimony, the appeals referee found that Oriole hired Ms. Tourte as a construction secretary and then changed her contract of hire by reassigning her to sales. The appeals referee awarded unemployment compensation benefits, concluding that Ms. Tourte voluntarily left her employment for good cause attributable to the employer. The Commission reversed, approving the appeals referee's factual findings but concluding as a matter of law that there was not good cause attributable to the employer. Because the appeals referee's decision that Ms. Tourte left for good cause attributable to the employer was supported by substantial, competent evidence, the Commission improperly reweighed the evidence.
There are cases which hold the question of "good cause attributable to the employer" is a question of fact. See Andino v. Lantana Partners, Ltd., 692 So.2d 945 (Fla. 2d DCA 1997); Carey McAnally & Co., Inc. v. Woodring, 629 So.2d 301 (Fla. 2d DCA 1993); State, Dept. of Commerce, Div. of Employment Sec. v. Dietz, 349 So.2d 1226 (Fla. 2d DCA 1977). There are also cases which appear to hold that the same question is strictly a matter of law. See Platt v. Unemployment Appeals Comm'n, 618 So.2d 340 (Fla. 2d DCA 1993); Ritenour v. Unemployment Appeals Comm'n, 570 So.2d 1106 (Fla. 5th DCA 1990); Beard v. State, Dept. Of Commerce, Div. of Employment Sec., 369 So.2d 382 (Fla. 2d DCA 1979). And, there are still other cases which opine that the issue is a mixed question of law and fact. See Poppe v. Eclectic Business Machines, Inc., 661 So.2d 65 (Fla. 2d DCA 1995); Amato v. State, Unemployment Appeals Comm'n, 648 So.2d 284 (Fla. 4th DCA 1995).
We accept that "good cause attributable to the employer" may indeed be a mixed question of law and fact to the extent that if competent, substantial evidence is insufficient to support the factual finding, then, as a matter of law, the appeals referee's conclusion cannot stand. However, if it is argued that "good cause attributable to the employer" *1285 is a question of law in which the decision of the Commission or this court turns on interpretation of the record, we disagree.
"Good cause attributable to the employer" has been further defined as "those circumstances which would impel the average, able bodied, qualified worker to give up employment." Ritenour, 570 So.2d at 1107. Even without the expanded definition, we conclude that "good cause attributable to the employer" is an ultimate fact best left to the fact-finder. A reasonable worker is much akin to the reasonable prudent person in the negligence context. Negligence is nearly always a question to be determined by the fact-finder.
We recognize the benefit of a more concise legal demarcation between what is and is not "good cause attributable to the employer." However, at this point, there is no line drawn in the sand. We do not agree that the Commission should be allowed to imprint its opinion of what the law should be on a case-by-case basis. Such a process amounts to nothing more than reweighing the evidence or placing its own interpretation on the appeals referee's factual findings.
A careful reading of the above cases cannot help but leave one with the impression that the establishment of policy by the overriding of an appeals referee's decisions is worse than no policy at all. Ritenour, relied upon by the dissent, gives meaning to the above statement. The facts established at the hearing in Ritenour are as follows:
... appellant was employed as a full-time bookkeeper or receptionist by Berger Roofing, Inc. from January 12, 1987 until February 28, 1989. In February 1989, appellant was informed that because the business was doing badly it would be necessary to reduce her hours which would substantially reduce her salary. The change became effective February 27, 1989.
Appellant testified that on February 27 she worked a full day. On February 28, she informed Kenneth Berger that she had applied for part-time unemployment and that he should expect the paperwork. At this time Berger slammed books on her desk and began yelling at appellant. He then went into his office and slammed the door. Berger later returned to the outer office and asked appellant why she had not cancelled his mother's bridge game appointment. Appellant had been told to cancel the game the prior day but could not reach the other party, and then forgot. Appellant asked Berger to stop yelling; he told her he was the boss and she was to do what he said or else. When appellant began crying, Berger left the office. Appellant finished her work for the day, took her purse and radio, and left the office. Appellant's husband subsequently called Berger and after an exchange of words, informed Berger that his wife would not be subjected to abusive comments and that she would not be back to work.
The referee determined as a conclusion of law that appellant had good cause to voluntarily leave her employment and this good cause `was attributable to the employing unit' because she was subjected to irrational if not abusive treatment.
570 So.2d at 1106-07. The Commission reversed the appeals referee. The Commission accepted the above finding of facts but determined that such "facts did not meet the legal standard for good cause." 570 So.2d at 1107. The Commission entered the following order:
With respect to the display of anger by the supervisor toward the claimant on her last day of work, the evidence in the record fails to establish that the claimant was subjected to intolerable treatment or that the supervisor's actions would have impelled the average, prudent person to voluntarily leave employment. Given the nature of the incidents testified to by the claimant and the lack of any evidence that such was a recurring event compelling the claimant to depart, it must be concluded that the claimant voluntarily left her employment without good cause attributable to the employer within the meaning of the statute.
570 So.2d at 1107 (emphasis in original).
Ritenour points out the problem in this area of the law  the Commission's redetermination of the appeals referee's factual findings that are supported by competent, substantial *1286 evidence. What could be more of a factual finding than that an employee was subjected to "irrational if not abusive treatment?" 570 So.2d at 1107. Yet, this factual finding was reweighed and reversed by the Commission when it found that "the record fails to establish that the claimant was subjected to intolerable treatment." 570 So.2d at 1107. And, the Commission's action was affirmed because the appellate court interpreted the Commission's action as a legal conclusion rather than a factual determination. If policy or more strict law is needed in this area, it should be accomplished by the legislature  not through decisions such as Ritenour.
We acknowledge this is a close case, and had the appeals referee decided to deny benefits, we would agree with that decision. We would agree because the appeals referee, as the fact-finder, personally heard the testimony, had the opportunity to observe the witnesses as they testified, and reached conclusions which we cannot from the cold record.
It was undisputed that Ms. Tourte was hired as a construction secretary. The dissent implies that because Ms. Tourte did not have a written employment contract, there were no obligations imposed on the employer. If this were a breach of contract action, we would agree. However, just because an at-will employee may be fired without any risk of a breach of contract action against the employer does not prevent that employee from seeking unemployment compensation benefits.
It is also undisputed that Ms. Tourte was to be denied the construction secretary position. It could be argued that her "voluntary" leave was premature because she had not yet been transferred to sales. A careful reading of the record reveals that she was, in fact, performing the duties as a secretary in sales as well as construction, a situation that Oriole conceded was a two-person job. The employer's solution was to remove Ms. Tourte from the construction secretary position, the job for which she was specifically hired, and have her become the full-time sales secretary, a position she would not have accepted at the time of hire. The question of whether an employee took sufficient reasonable steps prior to resigning for good cause attributable to the employer is an issue to be resolved by the fact-finder. See Kralj v. Unemployment Appeals Comm'n, 537 So.2d 201 (Fla. 2d DCA 1989). Here, the appeals referee found Ms. Tourte's actions reasonable and proper.
In conclusion, there was competent, substantial evidence to support the appeals referee's conclusion that Ms. Tourte voluntarily left her employment with good cause attributable to the employer. The Commission erred in ruling otherwise as a matter of law. We reverse the Commission's decision and remand for reinstatement of the appeals referee's decision.
Reversed and remanded.
NORTHCUTT, J., concurs.
ALTENBERND, A.C.J., dissents with opinion.
ALTENBERND, Acting Chief Judge, dissenting.
Despite the majority's well written opinion, I would affirm because the Commission has the authority to make this legal decision based on the facts as viewed in the light most favorable for the employee, Janice M. Tourte. Unlike Carey McAnally & Co., Inc. v. Woodring, 629 So.2d 301 (Fla. 2d DCA 1993), this case does not hinge on whether Ms. Tourte "voluntarily" left her employment. There is no question of fact that she quit voluntarily. The issue in this case is whether she left for "good cause attributable to her employer." Respectfully, neither the referee's findings of fact nor the evidence in the record provide competent, substantial evidence to satisfy this rigorous legal standard. I would affirm on the basis of the Fifth District's decision in Ritenour v. Unemployment Appeals Commission, 570 So.2d 1106 (Fla. 5th DCA 1990).
I agree with the majority that it is often difficult to decide whether an issue is factual or legal, especially in the context of administrative law. The issue of good cause is similar to an issue of reasonableness and is often a mixed question of fact and law. See Poppe v. Eclectic Bus. Machines, Inc., 661 So.2d 65, *1287 67 (Fla. 2d DCA 1995); Amato v. State, Unemployment Appeals Comm'n, 648 So.2d 284, 285 (Fla. 4th DCA 1995). Occasionally, it can be a pure question of law. See Platt v. Unemployment Appeals Comm'n, 618 So.2d 340 (Fla. 2d DCA 1993); see also Microfile, Inc. v. Williams, 425 So.2d 1218 (Fla. 2d DCA 1983) (holding that Commission may reach a different conclusion of law from that of the referee, based upon the referee's factual findings); Ritenour, 570 So.2d 1106 (same). In Ms. Tourte's case, the Commission could accept all the referee's findings of fact and still conclude, as a matter of law, that she did not establish good cause for leaving her employment. Such a decision is, at least in part, a policy decision for which this court should give deference to the Commission that is empowered to administer the law. § 443.171, Fla. Stat. (1995).
I admit that the common law and the Florida Constitution provide a legal structure that generally places the power to decide negligence issues in the hands of six ordinary citizens. The common law, however, does not justify a rule which permits individual administrative agency referees to make policy decisions that cannot be reviewed by a multi-member commission of the same agency. From my review of the record, the Commission made a correct legal decision based on either undisputed facts or on the facts viewed most favorably to Ms. Tourte.
The referee's entire findings of fact are:
The claimant was employed with this employer, a developer, from February 27, 1995, until August 11, 1995. When claimant was hired, she was hired to work as a secretary in the construction department. However, during the first part of the claimant's employment, she helped to get everything set up. The claimant was asked if she still wished to be secretary in the construction department. The claimant replied she would. However, the employer later told the claimant that she was to be secretary to the sales administrative assistant. The claimant declined that offer stating she wanted to be a secretary in the construction department. However, the claimant was informed that she was not to be given that position. The claimant voluntarily left this employment because the employer broke the contract of hire.
The Commission found no facts in this recitation that established circumstances that "would reasonably impel the average able-bodied qualified worker to give up his or her employment." Uniweld Prods., Inc. v. Industrial Relations Comm'n, 277 So.2d 827, 829 (Fla. 4th DCA 1973); Marcelo v. Department of Labor & Employ. Sec., 453 So.2d 927 (Fla. 2d DCA 1984). I agree with the Commission's legal decision. The record in this case may establish conditions in which an average worker would spend some off duty hours looking for another job, but it does not establish circumstances in which the state should subsidize that job search with unemployment benefits.
Beyond the abbreviated findings by the referee, the majority discusses the evidence in the record. The record establishes that Ms. Tourte is a woman in her fifties who lives in Fort Myers. She worked for two other employers in the six months preceding her job with Oriole of Naples, Inc. Oriole is an established development corporation on the east coast of Florida. In 1995, it was expanding its operations to Naples. Ms. Tourte was hired as a secretary by Oriole at the inception of this new operation. Both Oriole and Ms. Tourte anticipated that within a few months she would be a full-time secretary for the construction department. Soon thereafter, she worked five days a week in a construction trailer from 7:30 a.m. to 4:30 p.m. at an annual salary of $22,000. There is no dispute that the terms of employment were oral, and that Ms. Tourte was legally an at-will employee. See Lee County Port Auth. v. Wright, 653 So.2d 1104 (Fla. 2d DCA 1995).
After the first few months, the managers at Oriole changed its plans for Ms. Tourte. They wanted her to work as the secretary for the sales department. Al though she would still work in a trailer, the physical conditions would be comparable or superior to those in a construction trailer. She would receive the same salary. There were only two significant changes in her job description. First, she would be required to work around salesmen rather than construction workers. Second, *1288 her work hours would be shifted to 9 a.m. to 6 p.m., with the possibility of working one weekend day a month.
Concerning the first change, I concede that a reasonable employee might prefer to work in a construction department. Nevertheless, as a matter of law, being asked to work in the sales department is not such an egregious circumstance as to justify an average worker to quit.
I agree that a change in hours could occasionally be a sufficient basis to support a voluntary termination of an at-will employment. See George L. Blum, J.D., Annotation, Unemployment Compensation: Eligibility as Affected by Claimant's Refusal to Work at Particular Times or on Particular Shifts for Domestic or Family Reasons, 2 A.L.R. 5th 475 (1992). In this case, however, the shift is a relatively small change from one common daytime schedule to another. In Beard v. State, Dep't of Commerce, 369 So.2d 382 (Fla. 2d DCA 1979), the referee decided that a change from the day shift to the night shift was insufficient to justify a voluntary termination, even when the worker had day care problems. The Commission's predecessor overruled the referee and found that the employee quit for good cause. This court reversed the Commission's predecessor. The majority in this case now holds that the Commission cannot overrule a contrary ruling by a referee on a minor shift in work conditions. Unless the Commission has the authority to establish some legal parameters for this issue, referees will be free to reach conflicting outcomes with no meaningful review by the Commission or this court. See Moore v. Florida Unemployment Appeals Comm'n, 498 So.2d 992 (Fla. 1st DCA 1986) (employer's change in policy requiring outdoor worker to make up rainy days on weekends was not good cause for voluntary termination); Sonterre v. Job Serv. North Dakota, 379 N.W.2d 281 (N.D.1985) (change in work shift similar to Ms. Tourte's was not good cause).
The record establishes that Ms. Tourte had a commitment in Fort Myers at 6 p.m. on some evenings. If she had disclosed this commitment to Oriole at the inception of her job and explained its importance, I might conclude that this change in conditions was sufficient to warrant her decision to quit. It is undisputed, however, that she did not disclose her personal time constraint when she agreed to take this job. Further, the majority relies upon changes that Ms. Tourte predicted would occur if she had not quit. Ms. Tourte quit before these changes were actually implemented. Thus, we do not know what the actual change in her conditions would have been.
I recognize that valid public policies require us to give the benefit of the doubt to the employee in these cases. Livingston v. Tucker Constr. & Eng'g, Inc., 656 So.2d 499 (Fla. 2d DCA 1995). Nevertheless, the Commission must have latitude to establish statewide policies. With all due respect, I conclude that the majority's opinion deprives the Commission of its right to make a valid legal and policy decision. This opinion is the second recent case to authorize unemployment compensation for employees who quit because of small changes in the conditions of their oral contracts of hire. See, e.g., Andino v. Lantana Partners, Ltd., 692 So.2d 945 (Fla. 2d DCA 1997) (answering telephones without assistance was change in job conditions of at-will employee justifying voluntary termination). I think these precedents are troubling.