992 So.2d 428 (2008)
Robin L. MATTICE, Appellant,
v.
STATE of Florida, UNEMPLOYMENT APPEALS COMMISSION and Broward Plastic Surgery, PA, Appellees.
No. 4D07-4842.
District Court of Appeal of Florida, Fourth District.
October 22, 2008.
*429 Robin L. Mattice, Pompano Beach, pro se.
John D. Maher, Tallahassee, for appellee State of Florida, Unemployment Appeals Commission.
PER CURIAM.
Appellant, Robin Mattice, claims that the UAC acted improperly by adopting an appeals referee's finding of fact and rejecting his conclusion of law. Mattice contends this action was improper because the appeals referee's determination was supported by competent, substantial evidence. We agree.
Mattice was the co-office manager for Dr. Rainer Sachse at Broward Plastic Surgery from October 2002 to May 2007. For approximately three years prior to discharge, Mattice took on the billing service for Sachse in addition to her co-office manager responsibilities. This saved Sachse from having to hire and pay a billing service. The billing work was not a responsibility in Mattice's original job description. Mattice was given discretionary bonuses for the billing services. Other employees also received discretionary bonuses for additional work unrelated to the billing services.
Sachse believed the billing became part of Mattice's co-office manager job description, and that Mattice was to do the billing during her normal working hours. Mattice, however, never agreed to do the extra billing work for the same amount of compensation as her co-office manager responsibilities. In fact, Sachse failed to inform Mattice that her co-office manager job *430 duties now included the billing services, always avoiding the topic of additional pay for the billing service when Mattice asked him about it.
In late May 2007, Mattice formally requested an increase in pay for the additional billing service. Mattice wrote a letter to Sachse saying if she was not paid more, she would stop doing the billing services as of May 1, 2007, and would just continue with her co-office manager responsibilities. On May 3, 2007, in a meeting between Sachse and Mattice regarding Mattice's billing work, Sachse told Mattice to "continue what you are doing or go find another job and I'll hire somebody else or I'm going to cut your hours and your pay in half if you don't continue doing what I say." Mattice also told Sachse she did not like the way he treated her. Sachse told Mattice "if you don't like it go find another job." During this conversation, however, Sachse did not officially terminate Mattice's employment.
The next morning Sachse received a note from Mattice saying she was terminated by Sachse and would no longer be coming in to work. Sachse then sent Mattice an e-mail dated May 7, 2007, which stated that Sachse did not intend to terminate Mattice's employment, and "hop[ed] to see [her] back in [the] office." Sachse "strongly urg[ed]" Mattice to reconsider and to come back to work for him. Sachse promised to leave her position open until May 14, 2007.
Mattice responded, stating she was terminated by Sachse and had not voluntarily terminated her own employment. Sachse responded by letter, dated May 12, 2007, clarifying that he had not terminated Mattice's employment, and that he believed the billing service had become part of Mattice's job description.
On May 4, 2007, Mattice filed for unemployment with the Florida Agency for Workforce Innovation. Mattice claimed she was terminated by Sachse, entitling her to unemployment benefits. On May 24, 2007, the Agency denied Mattice's unemployment claim, stating she had voluntarily terminated her employment without good cause. Following a telephone conversation on July 2, 2007, an appeals referee affirmed the May 24 decision.
On July 23, 2007, Mattice appealed this decision to the Unemployment Appeals Commission ("UAC"). The UAC vacated the May 24 decision and remanded the case for further hearing and decision. On September 28, 2007, an appeals referee awarded Mattice benefits, holding that she voluntarily terminated her employment with good cause.
Sachse then filed a request for review by the UAC. The UAC reversed the decision of the appeals referee, upholding the appeals referee's finding of fact, but reversing the conclusion of law. Based on its own interpretation of the record, the UAC held that Mattice voluntarily terminated her employment without good cause, entitling her to no unemployment benefits.
In Tourte v. Oriole of Naples, Inc., 696 So.2d 1283 (Fla. 2d DCA 1997), the Second District held that the question of "good cause attributable to the employer"[1] is not a question of law determined by the UAC or an appellate court's "interpretation of the record." Id. at 1284-85. Rather, "good cause attributable to the employer" is a mixed question of law and fact to the extent "that if competent, substantial evidence is insufficient to support *431 the factual finding, then, as a matter of law, the appeals referee's conclusion cannot stand." Id. at 1284. Accordingly, "`good cause attributable to the employer'" is "an ultimate fact question best left to the fact-finder." Id. at 1285. This is because the appeals referee, as the fact finder, "personally hear[s] the testimony, ha[s] the opportunity to observe the witnesses as they testified, and reache[s] conclusions which [the UAC or an appellate court] cannot from the cold record." Id. at 1286.
Therefore, the UAC may not reverse a conclusion of law based merely on its interpretation of the "cold record," and may change the appeal's referee's findings of fact and conclusions of law only if they were not supported by competent, substantial evidence. See San Roman v. Unemployment Appeals Comm'n, 711 So.2d 93, 95-96 (Fla. 4th DCA 1998) (stating that the UAC may reverse the findings and conclusions of an appeals referee "only where there is no substantial, competent evidence to support the referee's determination").
A claimant who has "voluntarily left work without good cause will be disqualified from receiving unemployment benefits; however, if the employee leaves for `good cause' attributable to the employing unit, she will not be disqualified from receiving benefits." Id. at 95. "To voluntarily leave employment for good cause, the cause must be one which would reasonably impel the average able-bodied qualified worker to give up his or her employment." Uniweld Prods., Inc. v. Indus. Relations Comm'n, 277 So.2d 827, 829 (Fla. 4th DCA 1973). The applicable standards for determining a question of good cause to leave an employment are "standards of reasonableness as applied to the average man or woman, and not to the supersensitive." Id.
For example, where an employer insists on a substantial change in an employee's work hours, there is a material and unilateral breach of specific terms of the parties' employment agreement which constitutes good cause attributable to the employer. E.g., Wilson v. Fla. Unemployment Appeals Comm'n, 604 So.2d 1274, 1274 (Fla. 4th DCA 1992).
In this case, the UAC agreed with the appeals referee's finding of fact, but reversed his conclusion of law. In doing so, the UAC improperly overturned the appeals referee's finding, as there was competent, substantial evidence to support the appeals referee's conclusion that Mattice voluntarily terminated her employment for good cause attributable to Sachse.
Reversed.
TAYLOR, HAZOURI and MAY, JJ., concur.
NOTES
[1] Section 443.101(1), Fla. Stat. (2007), provides that individuals are disqualified from receiving unemployment benefits if they "voluntarily" terminate their work "without good cause" which is "attributable to the employing unit."