786 So.2d 48 (2001)
Laubette YAEGER, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and Aircraft Armature, Inc., Appellees.
No. 3D00-1832.
District Court of Appeal of Florida, Third District.
May 16, 2001.
*49 Laubette Yaeger, in proper person.
John D. Maher (Tallahassee), for appellee.
Before LEVY, GREEN, and RAMIREZ, JJ.
GREEN, J.
Appellant, Laubette A. Yaeger appeals an order denying her claim for unemployment benefits. We reverse.
Yaeger had been employed by the appellee/employer for twelve years as a motor winder when she left due to her claims of sexual harassment and/or a hostile work environment by a male coworker. At the hearing below, the referee found that Yaeger had not left work with good cause attributable to her employer, based upon the following findings of fact and conclusions of law:
Findings of Fact: The claimant became employed by an air-conditioning and electrical motor shop, as a motor winder, in 1986. Through the years the claimant grew dissatisfied with her wages. The claimant was also dissatisfied with what she believed was a disparity between the way women and men were treated, besides the difference in wages and opportunity to work overtime.
In 1996, the claimant complained to the president regarding why she worked 36 hours, less than the rest of the other employees. The employer had previously reduced the hours of all employees after the business slowed down, but subsequently, after the business increased, returned the former hours to all employees except to the claimant. The president had not increased her hours because the claimant had a poor attendance record, including being frequently late for work. The claimant had suffered several serious illnesses and had other family problems related to illnesses and a death in the family during the previous years. After her complaint, the president assigned the claimant additional hours of work.
At some point in time during the ensuing period, the claimant brought to the job and loaned tapes of movies of a *50 crude subject matter, including a scene or scenes of characters having sex with a chicken and male nudity. Thereafter, the claimant became upset because of comments being made by one of the individuals to whom she had loaned the tapes. Comments made were to the like of, "are you having Peter," when the claimant made a comment that she was going to lunch. The claimant had in fact complained about this employee and also regarding racial slurs and sexual comments, but she did not complain to her supervisor, the company president. The claimant did not complain to the individual left in charge when the president was not there, the president's son-in-law, because she did not believe it would do any good.
On September 8, 1998, the claimant presented a letter of complaint to the president enumerating all the reasons for her dissatisfaction with the conditions of employment, but primarily complaining about her coworker's behavior. The president offered to move the claimant's work bench, which the claimant did not believe would resolve the problem, since she would only be a short distance from the employee. The claimant declined this suggestion. The president told the claimant that he would call her.
During the ensuing two or three days, the president questioned the employee and other employees. In the meantime, the claimant worked September 9, 1998 and September 10, 1998. On September 11, 1998, the claimant left work before the end of her shift because she was upset. One of the last comments which the claimant heard was, "Snitch," which she believed had been directed at her by the employee. The claimant did not come to work on Monday, September 14, 1998. She believed the president had enough time to take action and had not. On Tuesday, September 15, 1998, the claimant telephoned the president and warned him that she was not returning to work.
Conclusions of Law: The law provides that a claimant who has voluntarily left work without good cause as defined in the statute shall be disqualified from receiving benefits. "Good cause" includes only such cause as is attributable to the employing unit or which consists of an illness or disability of the claimant requiring separation from the work. The term "work" means any work, whether full-time, part-time or temporary.
The record and evidence in this case show the claimant left her employment effective September 11, 1998. The evidence presented reveals this action was taken by her because she had concluded the employer did not take any action after she formally complained in writing regarding the conditions of employment that she found to be intolerable. The claimant's letter of complaint included all aspects of the work as in hours, assignments and wages. The claimant's primary area of complaints was directed at the behavior of a coworker towards her and his behavior in general. The coworker's sexual comments and racial commentary and other comments directed at her, were identified by her as harassment.
The claimant rejected an initial offer by the employer to move her bench and she left work on September 11, 1998, not to return. The claimant had given the employer less than three days to address her formal complaint, after concluding that her complaint was being ignored. Even if the claimant's complaints were valid, she should have given the employer a reasonable time to resolve the problems or warned the employer of a time limit before she would take some other *51 action. Even though the behavior described by the claimant of this other employee was inexcusable, her own actions in sharing movies and other questionable related material with this employee did not help her cause. If the claimant had been harassed by this individual for such a long time, she should not have brought into work and loaned this kind of material to the offending individual.
Based on the above considerations, it is found the claimant voluntarily quit her job without good cause attributable to the employer.
Yaeger appealed the referee's denial of unemployment compensation benefits to the Unemployment Appeals Commission ("UAC"). The UAC rejected the referee's finding that Yaeger had not complained to the individual left in charge of the employer's shop when the president was not there as not being supported by competent, substantial evidence. The UAC nevertheless concluded that its rejection of this factual finding did not otherwise affect the legal correctness of the referee's ultimate decision. Accordingly, the UAC affirmed the denial of unemployment compensation benefits to Yaeger. It is from this order of the UAC that the instant appeal was taken.
Generally speaking, neither the UAC or this court may reweigh the evidence and substitute its findings for those of the referee. See Grossman v. Jewish Community Center of Greater Fort Lauderdale, Inc., 704 So.2d 714, 716 (Fla. 4th DCA 1998); Studor, Inc. v. Duren, 635 So.2d 141, 142 (Fla. 2d DCA 1994); Verner v. Unemployment Appeals Comm'n, 474 So.2d 909 (Fla. 2d DCA 1985). The UAC and/or this court may reverse the referee's findings of fact, however, where there is no competent, substantial evidence in the record to support the referee's decision. Id.; section 120.57, Fla.Stat. (1999). Based upon our review of the record, we conclude that the UAC correctly rejected the referee's finding that Yaeger had not complained to the individual left in charge by the employer. The UAC, however, erred in not similarly rejecting the referee's findings and conclusion that Yaeger had prematurely quit her employment without first giving the employer an opportunity to conduct a reasonable investigation of her allegations. The record reveals that at the time Yaeger quit, the employer was not actively investigating her allegations and indeed did not commence an investigation in earnest until after Yaeger quit and filed her claim for unemployment compensation benefits.
By way of background, the record reveals that prior to terminating her employment, Yaeger claims that she had been continuously subjected to unwanted sexual remarks and innuendo by a male coworker named Todd Wallace. For examples:
(1) If Yaeger appeared to be in a bad mood, Wallace would ask whether it was that time of the month;
(2) Wallace referred to Yaeger's winding work tool as a "winding cock";
(3) Whenever Yaeger brought back a pita sandwich from Wendy's restaurant for lunch, Wallace would ask her whether she was having "peter" for lunch.
Yaeger also alleged that at Halloween, another male coworker, Steve McCullough, had molded pieces of candy into the shape of a skeleton on a timecard with an extra femur sticking straight up through the middle and left a note on her work bench which said "Happy Halloweeny, Laubette."
Yaeger testified that she constantly complained about these incidents to her boss' son-in-law, John Reed, who was left in charge when the boss, Carl O'Shields, was away from the office. O'Shields admitted *52 at the hearing below that he had asked Reed whether he had heard any inappropriate sexual comments in the workplace, and Reed replied that he had heard Todd Wallace and Steve McCullough using inappropriate language. In addition, Reed told O'Shields that he had asked them to tone it down and they had agreed to do so.
The referee found that Yaeger's actions in lending several movies with sexually explicit scenes to Wallace and McCullough may have contributed to their offending conduct. At the hearing below, Yaeger testified that she is a collector of what she called "cult classic movies" from the 1960's and 1970's, some of which contain sexually explicit scenes. She acknowledged that she had lent these movies to Wallace and McCullough as well as other coworkers at their request. She testified that with the exception of Wallace, her coworkers would occasionally discuss these movies at work without being crude.
In a letter dated September 8, 1998, Yaeger informed O'Shields of the hostile and uncomfortable work environment. She explained that although she had complained to Reed about the incidents, he had done nothing to remedy the problems and the situation had worsened. Yaeger closed the letter by requesting that O'Shields give this matter his immediate attention. Yaeger worked on September 9-10, 1998. On Friday, September 11, 1998, Yaeger left work at noon upset and in tears after informing O'Shields that she was leaving. Yaeger called to talk to O'Shields on Monday, September 14, 1998, but he was not in. She did not return to work on Monday. On Tuesday, September 15, 1998, Yaeger telephoned O'Shields and advised him that she would not be returning to work.
In concluding that Yaeger voluntarily left her employment without good cause attributable to her employer, the referee found, among other things, that Yaeger had given her employer less than three days to address her formal complaint before concluding that her complaint was being ignored. Contrary to this finding and conclusion, O'Shields admitted to the referee that he had done only a limited investigation which he concluded on September 11, 1998, the day that Yaeger left:
[Referee]: The question was never asked, is-why didn't you take firm action from the time that I [Yaeger] gave you the letter and the time that I [Yaeger] called you that I [Yaeger] was quitting? It's a question that's been going around and around trying [sic] to ask and it's never been asked.
[O'Shields]: Well, at the time I got the letter on the 8th and read it that night. And on the 9th, yes, I did call Todd in and I called John Reed in on the 10th, and on the 11th she left and that was all the investigating I done.
Curiously, the referee then assured O'Shields that his limited investigation into Yaeger's complaints would not affect the outcome of this case:
[Referee]: Okay. The reason why I asked the question again is, `cause I think you need to know that I'm not passing judgment on you.
[O'Shields]: Okay.
[Referee]: All that I'm doing back here is gathering the facts so I can make my decision. So whether you took any action, or you took a lot of action, or just a little bit of action, itit's not going to make a difference to me. Only the fact [sic] is going to make a difference to me.
The record evidence indicates that O'Shields never informed Yaeger that he would do any investigation into the allegations contained in her September 8, 1998 letter. Even after Yaeger called in to *53 terminate her employment, O'Shields never commenced an inquiry into the reasons for her departure. Indeed, the record evidence reflects that the employer in this case did not deem Yaeger's allegations of sexual harassment worthy of a serious investigation until after Yaeger quit and filed both a request for unemployment benefits and a complaint with the Equal Employment Opportunity Commission. At that point, the employer began to question other employees as to their knowledge of Yaeger's allegations. Thus, the conclusion below that Yaeger had not given the employer adequate time within which to address her complaints of sexual harassment is simply unsupported by the record before us. Accordingly, we find Yaeger's resignation to be with good cause attributable to the employer and that she is entitled to unemployment compensation benefits.
The question of whether an employees' resignation is both voluntary and without good cause attributable to the employer must be examined from the standard of the "average, able-bodied, qualified worker." See Eulo v. Florida Unemployment Appeal Commission, 724 So.2d 636, 637 (Fla. 2d DCA 1999); Grossman v. Jewish Community Center of Greater Fort Lauderdale, Inc., 704 So.2d 714, 716 (Fla. 4th DCA 1998); Dean v. Florida Unemployment Appeals Commission, 598 So.2d 100, 101 (Fla. 2d DCA 1992). "Good cause has been defined `as a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work.'" See Krueger v. Florida Unemployment Appeals Comm'n, 555 So.2d 1225, 1228 (Fla. 2d DCA 1989) quoting Bunn v. N.C., 70 N.C.App. 699, 321 S.E.2d 32, 34 (1984). An employer's failure to provide its employees with a tolerable work environment has been found to be good cause for leaving employment attributable to the employer. See, e.g., Fowler v. Unemployment Appeals Commission, 670 So.2d 1202 (Fla. 4th DCA 1996) (good cause found where an employer engages in a continuing pattern of sexual harassment, retaliation, and in discrimination); Dempsey v. Old Dominion Freight Lines, 645 So.2d 538 (Fla. 3d DCA 1994) (undue verbal abuse, including constant profanity by supervisor constitutes good cause attributable to employer); Gollet Enters. E., Inc. v. Fla. Unemployment Appeals Comm'n, 630 So.2d 1166 (Fla. 4th DCA 1993) (holding verbal abuse by the employer provided good cause for the employee to resign voluntarily).
In this case, Yaeger's allegations of sexual harassment by male co-workers were never determined to be unfounded. Clearly, the conduct of Yaeger's co-workers, as delineated in the referee's findings of fact, met the good cause standard of section 443.101(1)(a). Yet, the referee denied Yaeger benefits on grounds, among other things, that she had somehow invited the offending conduct by lending movies containing sexually explicit scenes to her co-worker(s) for viewing in the privacy of their homes. We, however, do not see how Yaeger's action in lending such movies to her fellow employees at their request, gave them license to thereafter subject her to sexual harassment in the workplace, particularly when she repeatedly rebuffed their offensive behavior.
Not only did Yaeger make it known to the offending parties that their conduct was unwelcomed, the record reveals that prior to her departure, she had constantly complained to the individual left in charge of the business when the employer was away. Thus, although the employer testified that he had not received actual notice of the situation until he received Yaeger's letter of September 8, 1998, evidence in the record supports the conclusion that the *54 employer had at least been on constructive notice of the situation for some time prior to September 8, 1998. We find that the employer's failure to intercede in this situation and take effective corrective measures before Yaeger's departure date was sufficient to meet the good cause standard of section 443.101. Accordingly, we find that Yaeger is entitled to receive unemployment compensation benefits and we reverse the decision below. See Eulo v. Florida Unemployment Appeal Comm'n, 724 So.2d 636, 637 (Fla. 2d DCA 1999); General Asphalt Co., Inc. v. Harris, 563 So.2d 803 (Fla. 3d DCA 1990); Lovett v. Florida Unemployment Appeals Comm'n, 547 So.2d 1253 (Fla. 1st DCA 1989).
Reversed.