SHEPHERD, J.,
concurring.
This case belies the old legal maxim that “for every wrong there is a remedy.” See, e.g., Holland v. Mayes, 19 So.2d 709, 711 (Fla.1944); Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner, 586 So.2d 1221, 1226 (Fla. 3d DCA 1991).
Susan Halstead began working for the University of Miami on July 30, 2006, under the supervision of Dr. Christine Thomas, maintaining and modifying Excel spreadsheets and managing a database for the Miami Project To Cure Paralysis. Although there are degrees of difference between her testimony and that of three present or former coworkers as to frequency and severity, the credible evidence demonstrates Dr. Thomas’ management style included harassment and verbal abuse of subordinates.
On January 18, 2007, seven months after she began her employment for the Miami Project, Halstead was sufficiently upset with her working conditions that she sought assistance from the University of Miami Human Resources Department. It fell to Maria Muniz, a Human Resources Manager in the department, to listen to Halstead’s concerns. Halstead related multiple instances where she was mercilessly upbraided by Dr. Thomas for her job performance, sometimes in the presence of other employees. Halstead naturally was concerned her supervisor was dissatisfied with her performance. At the same time, Dr. Thomas told Halstead on several occasions that if her performance was unsatisfactory, she would have been fired. Halstead’s work was apparently satisfactory in spite of the working conditions.
Because Halstead’s complaints did not include claims of unlawful discrimination or harassment of the civil rights variety, Muniz dispatched her back to Dr. Thomas’ laboratory to handle the problem on her own. Although the University had a “performance management director,” whose responsibilities included dealing with problematic managers, Muniz did not refer Dr. Thomas to that person or department at that time.
Ten months passed before Halstead again decided to address her working con *859 ditions — this time by delivering a resignation letter to Dr. Thomas and a copy to Muniz. During the interim, Halstead did not raise or discuss with any person, including Dr. Thomas’ boss, the fact she remained unhappy with her work environment. Her reason was that “she needed the job.”[1] This time, Muniz arranged an appointment for Halstead with the University “program management director.”
The Appeals Referee determined Hal-stead “voluntarily quit effective December 21, 2007, because she was not happy with the manner in which her supervisor spoke to her about her work.” The Referee also found Halstead “resigned without giving the employer a chance to correct the claimant’s perceived complaints.” The Unemployment Appeals Commission affirmed the Referee’s decision, likewise concluding Halstead “did not make a reasonable effort to preserve the employment relationship prior to leaving.”
There is ample evidence to support the conclusion that Dr. Thomas was a difficult manager. On the other hand, rare is the employee who goes through life without experiencing “the difficult boss.” Therefore, when examining whether a claimant such as Halstead left her employment for “good cause,” as she is required to prove to receive benefits, see § 443.101(l)(a)l, Fla. Stat. (2007), the appeals referee must determine whether the cause was one “which would reasonably impel the average able-bodied qualified worker to give up his or her employment.” Uniweld, Prods., Inc. v. Indus. Relations Comm’n, Fla. Dep’t of Commerce, Tallabas see, 277 So.2d 827, 829 (Fla. 4th DCA 1973). The average able-bodied qualified worker is the “average man or woman, and not the su-persensitive.” Id.
[P]lease be advised that this is formal notification of my resignation effective December 21, 2007. I will leave my position as program specialist from the Thomas lab at the University of Miami. This should give ample time to find a replacement and to provide any necessary training. Sincerely, Susan Halstead.
Although Halstead testified to multiple insults by Dr. Thomas, many in the presence of her coworkers, the testimony of the three coworkers called by Halstead at the appeals hearing was less damning, both as to frequency and severity. In fact, one of the three witnesses called by Hal-stead could not recall any instance where Dr. Thomas acted unprofessionally toward him or anyone else in her laboratory.
In verbal abuse cases where courts have upheld a determination that a claimant voluntarily left his place of employment for good cause attributable to his employer, the conduct itself was wrongful in addition to the words uttered. See, e.g., Eulo v. Fla. Unemployment Appeal[s] Comm’n, 724 So.2d 636, 638 (Fla. 2d DCA 1999) (concluding Eulo voluntarily left employment for good cause attributable to employer where she was subjected to “constant harassment and verbal abuse from her supervisor for nearly two years”); Grossman v. Jewish Cmty. Ctr. of Greater Ft. Lauderdale Inc., 704 So.2d 714, 715 (Fla. 4th DCA 1998) (concluding Grossman was entitled to benefits where she resigned because of supervisors’ conduct and verbal abuse during her evaluation, and where she was screamed at and berated in front of others, and endured other abusive treatment for one year); Dempsey v. Old Dominion Freight Lines, 645 So.2d 538, 539 (Fla. 3d DCA 1994) (finding Dempsey was constant recipient of verbal abuse, which amounted to “constant profanity,” where supervisor repeatedly referred to Dempsey as a “dumb a. — ” “and other *860 such offensive phrases”); Gollet Enters. E., Inc. v. Fla. Unemployment Appeals Comm’n, 630 So.2d 1166, 1166 (Fla. 4th DCA 1993) (upholding finding that claimant left for good cause where she was “subjected to repeated angry outbursts,” shouting, cursing, and profanity). In other words, “the employer’s actions [were] wrongful, not merely burdensome or unpleasant to the particular employee.” Buckeye Cellulose Corp. v. Williams, 522 So.2d 39, 40 (Fla. 1st DCA 1988) (Thompson, J., dissenting).
The appeals referee made no finding that Dr. Thomas’ actions were wrongful. Rather, the referee concluded that Hal-stead “voluntarily quit effective December 21, 2007, because she was not happy with the manner in which her supervisor spoke to her about her work.” He continued:
The evidence further shows that the supervisor did not discriminate against the claimant. In fact, the supervisor was frequently known to loudly, angrily, and sharply criticize many employees and associates. Applying a reasonableness standard, the supervisor’s conduct was not such that it would cause the average man or woman to resign under the same circumstances.
Neither the Unemployment Appeals Commission nor this Court is permitted to reweigh the evidenced presented to the appeals referee. Yaeger v. Fla. Unemployment Appeals Comm’n, 786 So.2d 48, 51 (Fla. 3d DCA 2001). There exists in the record substantial competent evidence to support this finding. Maynard v. Fla. Unemployment Appeals Comm’n, 609 So.2d 143, 145 (Fla. 4th DCA 1992) (stating that appellate court will not disturb Unemployment Appeals Commission action unless there is a lack of competent substantial evidence to support that action).
Finally, while I am sympathetic to Hal-stead’s financial motivation to retain her job, I am unable to ignore the fact she remained in her position for ten months after she originally complained of Dr. Thomas’ behavior and sought no additional recourse in the interim. See Glenn v. Fla. Unemployment Appeals Comm’n, 516 So.2d 88, 89 (Fla. 3d DCA 1987) (“Whenever feasible, an individual is expected to expend reasonable efforts to preserve his employment.”); see also Lawnco Servs., Inc. v. Unemployment Appeals Comm’n, 946 So.2d 586 (Fla. 4th DCA 2006) (concluding claimant voluntarily left work without good cause when he quit due to dissatisfaction with his pay, without first bringing his concerns to the employer’s attention or making other reasonable effort to preserve his employment).
I do not condone Dr. Thomas’ actions in this case. It speaks volumes that Dr. Thomas did not testify in her own defense. However, I agree with the majority that Halstead has no remedy under Florida’s unemployment laws and, therefore, join the majority in affirming the decision of the Unemployment Compensation Commission.

. Nor did her letter of resignation include any reason for resigning. The letter reads as follows in its entirety: