927 So.2d 49 (2006)
Rebecca S. BENSON, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellee.
No. 5D05-1708.
District Court of Appeal of Florida, Fifth District.
March 31, 2006.
*50 Talbot W. Trammell, of Trammell & Trammell, Tallahassee, for Appellant.
Pierre A.L. Mommers, of Mommers & Colombo, Melbourne, for Appellee, Ronnie & Co., Inc.
ORFINGER, J.
Rebecca Benson appeals the Unemployment Appeals Commission's ("UAC") decision affirming an appeals referee's determination that Benson is not eligible for unemployment compensation benefits because she voluntarily quit her job without good cause. Benson argues that the appeals referee's decision is erroneous because it is not supported by competent, substantial evidence. We affirm.
Benson had been employed as a massage therapist at the Imperial Salon and Spa for several years. When Benson arrived at work on June 16, 2004, she was presented with an employment agreement. The agreement was a compilation of earlier employment agreements, with the addition of a non-compete clause, prohibiting employees from working at any establishment with similar services within a seven-mile radius of Imperial. All employees were encouraged to sign the agreement by the close of business that day. Although Imperial's employees had been notified of the agreement at an employee meeting held the previous week, Benson claimed that she did not attend the meeting, and had no prior knowledge of the proposed agreement. Benson did not sign the contract and did not return to work after completing her shift.
Benson filed for unemployment compensation benefits, claiming that she had been discharged from her job because she refused to sign the employment agreement. Benson alleged that the employees were told that they must sign the agreement or be fired. Unemployment benefits were initially granted, as it was determined that "claimant was discharged for reasons other than misconduct connected with the work." Imperial appealed that decision and an evidentiary hearing followed.
At the hearing, Benson testified that she decided not to sign the agreement because it was not in her "best interest professionally or ethically to sign something [she] did not agree with." Specifically, Benson said that she felt the agreement was too restrictive and was "sprung" on her in an unprofessional manner. These factors influenced her decision to leave Imperial more than any of the specific terms of the agreement. Lorin Cox, Imperial's general manager, went over the agreement with Benson. Benson testified that she did not recall whether Cox told her she would be fired if she did not sign the agreement by the close of the business day, but that there was an indication that she would no longer be employed by Imperial if she did not sign the agreement. Benson also testified that Kristen Ramacca, Imperial's *51 president and CEO, told her that she did not want to lose Benson as an employee.
Ramacca testified that she discussed the agreement with Benson, who told her that she would be willing to sign it if the seven-mile restriction was taken out. To the contrary, Benson claimed that she never requested that the clause be removed. Ramacca suspected that Benson did not want to sign the agreement because an Imperial manager was planning on opening another spa within the seven-mile radius. At the time, there was no other spa within seven miles of Imperial. According to Ramacca, Benson was under an incorrect assumption that she would be fired if she did not sign the agreement. Ramacca testified that Benson did not have to sign the agreement, and that she would have been able to continue working at Imperial even if she did not sign it. Ramacca indicated that she told Benson that she could take the agreement home and come back the next day. Benson refused, and left. In contrast, Benson testified that Ramacca refused to let her take the agreement home and insisted that she sign it by 9:00 p.m. that same day. Both Ramacca and Cox denied telling Benson that she would be fired if she did not sign the agreement.
Following the hearing, the appeals referee recommended that the initial decision granting Benson unemployment compensation benefits be reversed, finding that Benson left her employment without good cause. The UAC affirmed the appeals referee's decision, concluding that it was supported by competent, substantial evidence. This appeal followed.
When a party appeals a final order of the UAC affirming the appeals referee's ruling, the appellant has the burden to demonstrate error. Wolfson v. Unemployment Appeals Comm'n, 649 So.2d 363 (Fla. 5th DCA 1995). The appeals referee is the trier of fact, responsible for weighing and resolving conflicting evidence and judging credibility. Ritenour v. Unemployment Appeals Comm'n, 570 So.2d 1106, 1107 (Fla. 5th DCA 1990). The appeals referee's decision must be upheld on appeal if its findings are supported by competent, substantial evidence. Anderson v. Unemployment Appeals Comm'n, 822 So.2d 563, 567 (Fla. 5th DCA 2002); Montgomery v. Unemployment Appeals Comm'n, 817 So.2d 1078, 1079 (Fla. 5th DCA 2002) (citing Miller v. Unemployment Appeals Comm'n, 690 So.2d 752, 753 (Fla. 5th DCA 1997)).
Section 443.101(1), Florida Statutes (2004), disqualifies individuals from unemployment benefits if they have voluntarily left their work without good cause. The question of whether a claimant left work voluntarily is a question of fact to be considered by the appeals referee as trier of fact. Ritenour, 570 So.2d at 1107. Benson claims that she "thought" that she had been discharged from her job at Imperial when she refused to sign the employment agreement. However, the appeals referee determined that Benson voluntarily left her employment, and was not discharged. That conclusion is supported by substantial, competent evidence. Benson testified that she did not remember anyone telling her that she would lose her job if she did not sign the agreement, only that it was implied. Cox and Ramacca both testified that they did not tell Benson she would be fired if she did not sign the agreement. In fact, Ramacca testified that Benson would have still been able to work at Imperial. The fact that Benson mistakenly believed that she had been fired is of no consequence.
Benson also argues that even if she left voluntarily, she had good cause to quit. "To voluntarily leave employment for good cause, the cause must be one *52 which would reasonably impel the average able-bodied qualified worker to give up his or her employment." Uniweld Prods., Inc. v. Indus. Relations Comm'n, 277 So.2d 827, 829 (Fla. 4th DCA 1973) (citations omitted); see also Ritenour, 570 So.2d at 1107. Benson claims that she had good cause to quit because the proposed employment agreement restricted where she could work, and she did not have ample time to review the agreement. Benson also claims that the agreement was not enforceable because its essential terms were left open. While these all may be good cause not to sign the agreement, they are not good cause to voluntarily leave employment.
AFFIRMED.
TORPY and LAWSON, JJ., concur.