976 So.2d 57 (2008)
The CITY OF CORAL GABLES, Appellant,
v.
CORAL GABLES WALTER F. STATHERS MEMORIAL LODGE 7, FRTERNAL ORDER OF POLICE, Appellee.
No. 3D06-2305.
District Court of Appeal of Florida, Third District.
February 6, 2008.
Rehearing Denied March 6, 2008.
*59 Bryant, Miller, Olive, P.A., and James C. Crosland and Denise M. Heekin, Samuel S. Heywood, for appellant.
Phillips & Richard, P.A., and Kathleen Phillips, Miami, for appellee.
Before WELLS, SHEPHERD and ROTHENBERG, JJ.
SHEPHERD, J.
The City of Coral Gables (the City) appeals a final order of the Public Employees Relations Commission (the Commission), finding the City committed an unfair labor practice, by seeking to coerce the president and vice president of the appellee Coral Gables Walter F. Stathers Memorial Lodge 7, Fraternal Order of Police (the FOP or the Union), to forego receipt of some $821,000 in pension contributions the City had agreed to repay to its union-represented sworn police officers pursuant to the settlement of a grievance prosecuted by the Union under the parties' collective bargaining agreement. The City argues the application of an incorrect evidentiary standard by the Commission necessitates reversal of the Commission order. We agree, and, for the additional reasons expressed below, direct the Commission to dismiss the charge. A brief summary of the factual and administrative history of this case is necessary to our decision.

FACTUAL BACKGROUND
This litigation arises out of the skyrocketing cost to the City in recent years of funding its employee pension program. In an effort to stanch the cost, the City negotiated in its 2003-2005 collective bargaining agreement with its police union an employee contribution provision. The provision reads:
ARTICLE 38
RETIREMENT SYSTEM
. . . .
6. Effective upon ratification of the Agreement, bargaining unit members shall contribute three percent (3%) of their gross pay (excluding uniform allowances) to the City's retirement plan. Effective October 1, 2004, bargaining unit members shall contribute another two percent (2%) to the City's retirement plan for a total of a five percent (5%) contribution. The City agrees that contributions will be transferred to the retirement fund no later than seven (7) days after the members receive their paychecks. It is agreed that a re-opener will occur within nin[e]ty (90) days of ratification of this Agreement for the purpose of negotiating a change for the Cost of Living (C.O.L.A.) provision of the retirement plan. It is further agreed that the five percent (5%) contribution mentioned above will be applied to the cost of a mutually acceptable C.O.L.A. improvement. The City of Coral Gables Fraternal Order of Police, Lodge # 7 agrees to equally share the expense of an actuarial study to determine the cost of a C.O.L.A. improvement.
(emphasis added). After ratification, the officers began making their contributions as agreed. However, during the re-opener, *60 the City refused to offer any change in the C.O.L.A. provision of the retirement plan, citing city budgetary constraints and ever-increasing pension costs. In response, the Union filed a grievance pursuant to the collective bargaining agreement, arguing that a C.O.L.A. increase was intended as a quid pro quo for the officers' retirement plan assistance. On the eve of arbitration of this dispute, the City agreed to settle the grievance by returning the retirement contributions to the officers and halting further deductions.
At the time of the settlement, the parties also were engaged in negotiations for a successor agreement to the 2003-2005 collective bargaining agreement. The Union advanced a first-year wage proposal offer of a zero percent wage increase, but with the elimination of pension contributions. The City rejected this proposal and declared an impasse. Clearly miffed at what it considered to be Union legerdemain in seeking return of the pension contributions,[1] the City apparently was not of a mind to allow the pension contribution component of the 2003-2005 collective bargaining agreement to become a sub silentio officer wage increase during the next contract period. Indeed, the City unilaterally withheld payment of the settlement sum to its sworn police officer corps during this time in an effort to fold its obligation to repay into the successor agreement negotiations.
On January 12, 2006, similarly frustrated, the Union initiated an unfair labor practice charge against the City, alleging the City had not complied with the terms of the earlier grievance settlement. On February 16, the City settled this charge by again agreeing to pay and to stop the officer deductions, apparently forthwith. Coral Gables City Manager David Brown called Union President Eugene Gibbons and asked him to meet him the next morning to receive the reimbursement checks.
The next morning, February 17, Brown and Gibbons met. Union Vice President Randy Hoff accompanied Gibbons. Brown did not bring the checks. According to Gibbons, Brown told him:
I don't think you know what you're doing or what you're getting yourself into.
. . . .
[H]e went [on] to tell me that if we were to take these checks back, that we were looking at a long future of no raises for at least the next three years, a zero percent wage increase. . . .
According to Gibbons, Brown also expressed that "the City Commission was extremely upset at the FOP's position[ ] in taking the checks back and that he had been instructed by the Commission to recoup that money one way or another." Except as to certitude, Brown does not materially dispute Gibbons' account of the conversation. Gibbons demanded the checks. They were handed over on February 21.
On March 6, 2006, the Union initiated the Unfair Labor Practice Charge, which has become the subject of this appeal. The focus of the charge is the February 17 conversation. The charge alleged that the City, through Brown, violated sections 447.501(1)(a), (c), and (d) of the Florida Public Employees Relation Act, ch. 447, pt. II, Fla. Stat. (2007) ("the Act"), by threatening the FOP with a "zero percent wage increase for the next three years, or imposing *61 some other retaliatory method[,]" if it accepted the reimbursement checks on behalf of its sworn police officer bargaining unit members pursuant to the settlement of the January 12, 2006 unfair labor practice charge.

THE ADMINISTRATIVE PROCEEDING
On May 4, 2006, the parties participated in an administrative hearing convened pursuant to section 120.57(1)(a), Florida Statutes (2006). On June 20, the hearing officer issued a recommended order, in which he concluded the City, through Brown, had made an "unambiguous threat" to the officer corps through its bargaining agent in violation of section 447.501(1)(a), Florida Statutes (2006), which prohibits public employers, their agents, or representatives from "[i]nterfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under [the Florida Public Employees Relations Act, chapter 447, part II "the Act"]." The hearing officer rejected as "premature" the Union's claim under section 447.501(1)(c), Florida Statutes (2006),[2] wherein the Union alleged the City was not bargaining in good faith in pending impasse proceedings in the successor collective bargaining agreement discussions. Finally, the hearing officer rejected the Union's claim that the City, again through Brown's action, had engaged in retaliation against the represented police corps in violation of section 447.501(1)(d), Florida Statutes (2006),[3] for the filing by their union bargaining representative of the January 12, 2006 unfair labor practice charge, brought to secure compliance with the earlier grievance settlement. While the hearing officer found the timing of Brown's statement "suspect"  occurring as it did on February 17, 2006, just one day after the settlement of the January 12, 2006, charge  he nevertheless concluded, "Brown's threat to retaliate against the employees was motivated by his disagreement with Gibbons' interpretation of the [collective bargaining] contract and the ramifications stemming from that disagreement, not because the FOP filed the unfair labor practice charge." (emphasis added).
At the hearing, Brown advanced a softer rendition of the February 17 conversation, stating he simply was seeking to promote labor peace into the future by advising Union leadership about what he felt was "likely to happen" or "may happen" in its future bargaining encounters with the City Commission, if the Union insisted on taking the reimbursement checks. The hearing officer, however, found the statements more than just a friendly warning:
Brown, as the City Manager, was concerned about the long-range effects on labor peace in the City because the FOP was seeking reimbursement of the employees' pension contributions. In his attempt to maintain labor harmony, Brown's statements were more forceful than he realizes. Brown's testimony that he was attempting to emphasize to Gibbons and Hoff that they would "really" be at impasse if the employees to the reimbursement checks is credited.
The hearing officer concluded:
Brown's unambiguous threat of future wage freezes and that the City would *62 recoup the money the employees paid into the pension fund one way or another was intended to coerce the employees into relinquishing their collective right to the reimbursement checks, which was obtained through concerted, protected activity. Brown's threat has the foreseeable effect of instilling in the employees a reasonable belief that further participation in protected activity might also result in future adverse employment consequences; thus, the City violated Section 447.501(1)(a), Florida Statutes.
On July 3, 2006, the City filed three exceptions to the hearing officer's recommended order. First, the City argued that the hearing officer erred in finding a violation of section 447.501(1)(a), because the only "right" with which the City arguably interfered was a contractual right based on the terms of the parties' settlement of an unfair labor practices charge, which is not a right protected by statute. Second, the City maintained that the record evidence established (and the hearing officer had found) that the City's actions were not motivated by protected conduct, thus negating one of the essential elements of the section 447.551(1)(a) claim. Finally, the City argued that the hearing officer erred in finding the City had "coerced" the Union because the Union, prior to February 17, voluntarily had proposed for the next collective bargaining agreement the very arrangement which it claimed the City to have coerced.
On August 21, 2006, the Commission issued a final order, which rejected each of the City's three exceptions and incorporated the hearing officer's recommended order. Like the hearing officer, the Commission, in its dispatch of the first two exceptions, focused on the "foreseeable effect" of Brown's statements on the "affected employees" rather than Brown's motivation in making them. In the Commission's own words:
Here, the settlement proceeds were a result of the parties' settlement negotiations concerning a collective bargaining agreement grievance. In that sense, the hearing officer found that Brown's threat had the foreseeable effect of instilling in the employees a reasonable belief that further participation in the protected activity of filing and pursuing grievances might result in adverse employment consequences. In particular, the hearing officer concluded that it was reasonable for affected employees to believe that the comment by [Brown] concerning the effect of receiving proceeds from a collective bargaining grievance could be recouped unfairly at a later date, resulting in the chilling of a protected right.
The Commission also rejected the City's third exception, relying on the proposition that "an employer's motivation and intent . . . is a finding of fact within the hearing officer's province. . . ." According to the Final Order, "the hearing officer found that Brown made the threatening remarks [to the Union] for protected activity, filing and then settling a collective bargaining agreement grievance." Because we conclude the Commission misapplied the law applicable to this case and also fatally misconstrued the hearing officer's findings, we reverse the order on appeal.

STANDARD OF REVIEW
A threshold issue in this appeal is the standard of review applicable to the Commission's decision. Generally speaking, whether an individual violated a statute is a question of fact to be determined by the hearing officer based on the evidence and testimony. Gross v. Dep't of Health, 819 So.2d 997, 1003 (Fla. 5th DCA 2002). Courts are not permitted to substitute *63 their judgment for that of the administrative agency as to the weight of the evidence. § 120.68(7)(b), (10), Fla. Stat. (2006).
This general principle of administrative review gives way, however, in two circumstances. First, although courts typically uphold agency decisions that are supported by competent, substantial evidence, "the same standards of review do not apply to an erroneous application of the law to the facts." LeDew v. Unemployment Appeals Comm'n, 456 So.2d 1219, 1221-22 (Fla. 1st DCA 1984). No deference is due an error of law. Office of Fire Code Official v. Fla. Dep't of Fin. Servs., 869 So.2d 1233, 1237 (Fla. 2d DCA 2004) (stating that deference to agency decisions "does not require that we defer to an implausible and unreasonable statutory interpretation adopted by an administrative agency").
Second, the deference normally afforded agency determinations does not extend to findings of fact that are not expressly supported by competent, substantial evidence. A court must vacate, or, where appropriate, set aside a final order, "if it finds that the final order depends on any finding of fact that is not supported by competent substantial evidence in the record of the proceeding." § 120.68(10), Fla. Stat. Each of these exceptions to the general principle of administrative review that we customarily follow is applicable to this case.

ANALYSIS
This appeal focuses on the Commission's determination that the City unlawfully coerced the Union in violation of section 447.501(1)(a) of the Florida Public Employees Relations Act. As previously stated, this provision of the Act prohibits a public employer from "[i]nterfering with, restraining, or coercing" its employees "in the exercise of any rights guaranteed them" by chapter 447, part II. § 447.501(1)(a), Fla. Stat. The "rights guaranteed" public employees are enumerated in section 447.301, Florida Statutes (2006), and include "the right to engage in concerted activities not prohibited by law, for the purpose of collective bargaining or other mutual aid or protection." § 447.301(3), Fla. Stat. (2006). In support of its section 447.501(1)(a) claim, the Union's charging document alleges that Brown's statements at the February 17, 2006 meeting had instilled in the member employees a "reasonable belief" that protected conduct would henceforth be punished: "Mr. Brown has created the reasonable belief that participation in protected activity may result in adverse employment consequences, and by doing so interfered with, restrained and coerced employees in the exercise[ ] of their Section 447.301 rights." (emphasis added).
Contrary to these allegations, however, a successful claim under section 447.501(1)(a) does not hinge on the employee's "reasonable belief." Rather, a successful claim under this provision requires proof that the exercise of statutorily protected conduct motivated the employer to make a threatening or coercive decision or a decision against the employee's interest. Sch. Bd. of Lee County v. Lee County Sch. Bd. Employees, Local 780, AFSCME, 512 So.2d 238, 239 (Fla. 1st DCA 1987). As the court stated in Lee County:
In order to determine whether the evidence sustains a charge alleging an unfair labor practice, when it is grounded upon an asserted violation of protected activity, the following general principles should be considered by the hearing officer and by PERC:
(1) In any such proceeding the burden is upon the claimant to present proof by a preponderance of the evidence that (a) his conduct was protected and (b) his *64 conduct was a substantial or motivating factor in the decision taken against him by the employer.
(2) If the hearing officer determines the decision of the employer was motivated by a non-permissible reason, the burden shifts to the employer to show by a preponderance of the evidence, notwithstanding the existence of factors relating to protected activity, it would have made the same decision affecting the employee anyway[.]
Id. at 241 (quoting Pasco County Sch. Bd. v. PERC, 353 So.2d 108, 117 (Fla. 1st DCA 1977)) (emphasis added). This two-pronged burden shifting test is almost as old as the Florida Public Employees Relations Act itself,[4] and "encompasses all types of activity protected by the Act." Lee County, 512 So.2d at 241. As with any cause of action, the employee's failure to prove this essential element constitutes a failure to establish a prima facie case. Brown v. Dep't of Transp., 30 FPER ¶ 300 (2004).
Rather than focus on this evidentiary standard, however, both the hearing officer and the Commission focused on the effect of Brown's statement on the Union and its employees. Thus focused, the hearing officer concluded that "Brown's threat ha[d] the foreseeable effect of instilling in the employees a reasonable belief that further participation in protected activity might also result in future adverse employment consequences; thus, the City violated Section 447.501(1)(a), Florida Statutes." See supra pp. 61-62 (emphasis added). The Commission followed suit. Misapplying Lee County and a fortiori, its progenitor, Pasco County, the Final Order rendered by the Commission states:
In School Board of Lee County v. Lee County School Board Employees Local 780, AFSCME, 512 So.2d 238 (Fla. 1st DCA 1987), the First District Court of Appeal held that, in proving a violation of Section 447.501(1)(a), Florida Statutes, an employee must show that his or her otherwise protected activity was of a substantial motivating factor in the employer's decision or action constituting the alleged violation. Here, the settlement proceeds were a result of the parties' settlement negotiations concerning a collective bargaining agreement grievance. In that sense, the hearing officer found that Brown's threat had the foreseeable effect of instilling in the employees a reasonable belief that further participation in the protected activity of filing and pursuing grievances might result in adverse employment consequences. In particular, the hearing officer concluded that it was reasonable for affected employees to believe that the comment by the City Manager concerning the effect of receiving proceeds from a collective bargaining grievance could be recouped unfairly at a later date, resulting in the chilling of a protected right. Consequently, the Commission denies the City's exceptions one and two.
(emphasis added). Applying the same rationale as the hearing officer, the Commission found the City engaged in unfair labor practice. Like the hearing officer, the Commission also did not proceed to consider *65 the second prong of the Pasco/Lee County standard.
Seeking affirmance, the Union argues it is not necessary to adhere strictly to the two-pronged evidentiary standard enunciated by the First District in Pasco County and later reaffirmed in Lee County. As authority for its position, the Union turns not to binding case law, but rather to a twenty-year-old Commission decision, Professional Fire Fighters of Orlando v. City of Orlando, 13 FPER ¶ 18218 (1987), decided just a few days after Lee County. With considerable chutzpah, the Commission in City of Orlando announced that Lee County was "contrary to our decisional law." City of Orlando, 13 FPER ¶ 18218 at 517. It then sought to distinguish, if not gut, the First District Court of Appeal's fresh reaffirmance of Pasco County decision stating:
[W]e think the Court's holding in School Board of Lee County should be limited to its facts and applied only to factual situations where a statement is reasonably susceptible to more than one interpretation. Where the alleged coercive statement is, as here, unambiguous, we believe motive can be imputed from the statement itself and need not constitute a separate element of proof.
City of Orlando, 13 FPER ¶ 18218 at 517 (emphasis added). Because the hearing officer also found that Brown had made "an unambiguous threat" in this case, counsel for the Union argues the Union similarly is entitled to the benefit of what counsel characterizes as "the City of Orlando limitation" to Lee County. The Union suggests the Commission's "special expertise in addressing labor issues," and that it has been found to be "uniquely qualified to interpret and apply the policies enunciated in chapter 447[,]" see Cagle v. St. Johns County Sch. Dist., 939 So.2d 1085, 1089 (Fla. 5th DCA 2006), should countenance acquiescence by us in the reasoning of City of Orlando. We decline to acquiesce.
Instead, we conclude the Commission's decision to retreat from Lee County was plainly improper. First, the "unambiguous statement" exception articulated in City of Orlando, see City of Orlando, 13 FPER ¶ 18218 at 517, is directly contrary to established law. In Lee County, the First District Court of Appeal interpreted section 447.501(1)(a) as requiring a showing that the employer was motivated by protected conduct. The court stated: "In proving a violation of section 447.501(1)(a), an employee must show that his or her otherwise protected activity was a substantial or motivating factor in the employer's decision or action which constituted the alleged violation." Lee County, 512 So.2d at 239 (emphasis added). In so doing, the court reaffirmed and emphasized that "the employer's motivation, a motivation originating in the otherwise protected employee conduct, must remain a critical element in establishing that such a violation occurred." Id. at 242 (emphasis added). The Commission has ignored this admonition.[5]
*66 More importantly, both the Union and apparently the Commission forget that the role of interpreting the law is reserved for the judiciary. The First District Court of Appeal long ago issued its judicial determination of the applicable legal standard to be applied to the facts of this case. The Commission may not disregard an interpretation of a statute rendered by a court of this state. Costarell v. Fla. Unemployment Appeals Comm'n, 916 So.2d 778, 782 n. 2 (Fla.2005) (stating that agencies must follow judicial interpretations of law even if the appellate court is located in another district). Nor do we accept the Union's suggestion that we defer to the Commission's special expertise in addressing labor issues for purposes of this case. See Kadia v. Gonzales, 501 F.3d 817, 821 (7th Cir.2007) ("Deference is earned; it is not a birthright."). Deference is not due to erroneous applications of law to the facts by a quasi-judicial body such as the Commission. See LeDew, 456 So.2d at 1221. Nor is it due to an agency decision rendered by the agency in disregard of its place in this state's dispute resolution system. Kadia, 501 F.3d at 821.
For all of these reasons, we reverse the order on appeal.

THE REMEDY
In the usual case, when an agency applies an incorrect legal standard, the remedy is to remand the matter to the agency for further fact finding. See, e.g., Lee County, 512 So.2d at 242. However, where the undisturbed findings of the order under review are sufficient to sustain reversal, remand is unnecessary. See, e.g., Bacardi v. Lindzon, 728 So.2d 309, 312 (Fla. 3d DCA 1999) (finding remand unnecessary where the record and trial court's order are sufficient to resolve the issue). The latter is the circumstance of this case.
Although it is indisputable on the record of this case that Brown did not want the Union to accept the pension reimbursement checks, he testified the Union had every right to receive the checks:
Q. And you went to this meeting on February 17th, in part, you say, to let [Gibbons] know that you didn't agree with the union's interpretation of the collective bargaining agreement, correct?
A. That's correct.
. . . .
Q. You didn't think it was fair that they should get this money back because, in your mind, that's not what the money was intended for, correct?
A. That's incorrect.
. . . .
A. I went down to that meeting to let [Gibbons] know what I thought was going to happen with the labor as a result of the decision he made, and that was it.
. . . .
Q: Okay, so, according to your testimony, you, as the chief executive officer of the city, had met Mr. Gibbons only one time, went down there to tell him what you thought might happen if he accepted the checks, correct?
A. Yes, ma'am.
Q. And you did tell him, did you not, that you wanted them to be aware of the full ramifications of what they were doing by accepting those reimbursement checks, correct?
A. Yes, ma'am.
Q. Which, you understand, they had a right to accept, correct?

*67 A. Yes, ma'am.
According to Brown, his reason for seeking the meeting with Union leadership on February 17 was to attempt to maintain labor harmony at a time when the City was facing at least a pension, if not a full budget crisis, rather than some anti-union animus. The hearing officer agreed with Brown. He found that Brown was motivated by concerns over labor harmony  and not the exercise of a protected right  in raising the specter of impasse to union leadership:
Brown, as the City Manager, was concerned about the long-range effects on labor peace in the City because the FOP was seeking reimbursement of the employees' pension contributions. In his attempt to maintain labor harmony, Brown's statements were even more forceful than he realizes. Brown's testimony [at the evidentiary hearing] that he was attempting to emphasize to Gibbons and Hoff that they would "really" be at impasse if the employees took the reimbursement checks is credited. The City seeking to recoup the money from the employees is consistent with the City Commissioners' belief that there is a pension crisis and the City's belief that the purpose of the [five percent employee contributions] was to help fund the pension plan.
(emphasis added).
Thus, regardless of whether Brown's statements to Union leadership were threatening or coercive, it cannot be doubted that the motivation for those statements was unrelated to the Union's exercise of a protected right. In fact, recalling that the hearing officer had dismissed the Union's unfair labor practice charge arising out of the then pending collective bargaining renewal impasse proceedings discussions as "premature," the most that can be said is that Brown's February 17 statements at best were related from a legally meaningful standpoint to the Union's contractual right  at the moment  to receive pension reimbursements checks.
Any shred of remaining doubt about the City's liability is erased by the recommended order itself. In rejecting the Union's contention that the City had violated section 447.501(1)(d) of the Act, the hearing officer found that, "Brown's threat to retaliate against the employees was motivated by his disagreement with Gibbons' interpretation of the contract and the ramifications stemming from that disagreement, not because the FOP filed the unfair labor practice charge." (emphasis added). The Commission's contrary conclusion in the Final Order that the hearing officer "found that Brown made threatening remarks for protected activity, filing and then settling a collective bargaining agreement grievance," is not supported. See § 120.68(10), Fla. Stat.
The record in this matter  and in particular the hearing officer's explicit findings of fact regarding Mr. Brown's motive  settles the question whether the City violated section 447.501(1)(a). In no uncertain terms, the hearing officer concluded that Brown was motivated by concerns other than protected conduct. Because that conclusion is based upon ample and competent evidence, and because the Union did not challenge that conclusion before the Commission, remand for further proceedings is unnecessary.
For the foregoing reasons, we reverse the order of the Florida Public Employee Relations Commission with directions that the unfair labor practice charge brought against the City pursuant to section 447.501(1)(a) of the Florida Statutes be dismissed.
Reversed and remanded with directions.
NOTES
[1] A change of union leadership occurred one year after the negotiation of the 2003-2005 collective bargaining agreement. According to the City, prior union leadership clearly understood and acknowledged that the pension contribution component of the 2003-2005 collective bargaining agreement was unconditional.
[2] Section 447.501(1)(c) prohibits public employers, their agents or representatives from "[r]efusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit."
[3] Section 447.501(1)(d) prohibits public employers, their agents, or representatives from "[d]ischarging or discriminating against a public employee because he or she has filed charges or given testimony under [chapter 447, part II]."
[4] Article I, section 6 of the Florida Constitution (1885), which guaranteed the right to bargain collectively only to private employees, was amended in 1968 to afford the right to public employees as well. Art. I, § 6, Fla. Const. (1968). After some High Court prodding, see Dade County Classroom Teachers Ass'n v. Legislature, 269 So.2d 684 (Fla. 1972), the implementing legislation for the 1968 amendment was adopted by the state legislature in 1974. See ch. 74-100, § 3, at 135, Laws of Fla. (codified as ch. 447, pt. II, Fla. Stat. (1997)).
[5] Remarkably, the Commission seems to have long misapplied the Pasco/Lee County evidentiary standard. See, e.g., IAFF Local 2771, New Smyrna Beach Prof'l Fire Fighters Ass'n v. City of New Smyrna Beach, 10 FPER ¶ 15215 at 436 (1984) (maintaining that an employer violated section 447.501(1)(a) if the effect of the conduct "was . . . to instill in employees the reasonable belief that participation in any protected activity might result in adverse employment consequences) (emphasis added). The Commission continues to misapply the standard to this day. See, e.g., Shelby v. City of Miami Beach, 25 FPER ¶ 30161 at 347 (1999) (continuing to approve IAFF Local 2771 long after Lee County, and citing City of Orlando for the proposition that "motive can be imputed" from an unambiguous employer statement and "need not constitute a separate element of proof"). Considering the confusion in the Commission's decision-making in this area, we do not fault the hearing officer for his recommendation.