COHEN, J.
John Laneri was employed as a pilot by Worldwide Aircraft Services, Inc. (“Worldwide”), from May 2007 until July 6, 2011. The events that led to Laneri’s separation from Worldwide began when he was scheduled to fly a client to Santa Fe, New Mexico. Laneri was then to fly to Aspen, Colorado, to pick up another client, whom he was to fly to Huntsville, Alabama. Under Federal Aviation Administration (“FAA”) regulations, Laneri was prohibited from working more than a fourteen-hour day. It is the pilot’s responsibility not to exceed those hours. Unfortunately, the first client was almost three hours late. According to Laneri, by the time he arrived in Santa Fe, he could not complete the trip to Huntsville within the fourteen-hour window. Laneri called Worldwide’s CEO, Michael Hunnicutt, to inform him that it would be impossible to complete the Aspen-to-Huntsville trip, in part because of weather issues, but primarily because of the fourteen-hour window. Laneri claimed that Hunnicutt became upset over his failure to complete the trip and fired him.[1] Worldwide maintained that Laneri quit.
In denying benefits, the initial notice of determination found, “The claimant quit due to dissatisfaction with the working conditions. Investigation has revealed that the working conditions did not constitute good cause for leaving the job.” At a hearing before an appeals referee, Hunni-cutt admitted to using an expletive in his conversation with Laneri, but denied firing him. Worldwide’s position was that it simply wanted Laneri to fly the plane to Aspen where it would assess the feasibility of continuing on to Huntsville, which Laneri disputed. Worldwide believed the trip could have been completed but for delays caused by Laneri.
The issue before the referee at the hearing was whether Laneri was fired or quit. The referee framed the issue as, “Whether the claimant was discharged for misconduct connected with work or voluntarily left work without good cause as defined in the statute.... ” Ultimately, the referee rejected Worldwide’s assertion that Laneri quit, which had formed the basis of the initial denial of benefits. Instead, the referee found that Worldwide discharged Laneri for misconduct connected with work, thus upholding the determination that Laneri was disqualified from receiving benefits. The Reemployment Assistance Appeals Commission affirmed the referee’s decision. While the referee’s factual findings supported by competent, substantial evidence are binding on this Court, the legal import of those findings are not. Arbor Tree Mgmt., Inc. v. Fla. Unemployment Appeals Comm’n, 69 So.3d 376, 381 (Fla. 1st DCA 2011); City of Coral Gables v. Coral Gables Walter F. Stathers Mem’l Lodge 7, 976 So.2d 57, 63 (Fla. 3d DCA 2008); Brown v. Unemployment Appeals Comm’n, 633 So.2d 36, 39 (Fla. 5th DCA 1994).[2]
Effective June 27, 2011, a short time before Laneri’s hearing, the Legislature amended section 443.031, Florida Statutes. See Ch.2011-235, § 2, at 3484, Laws of Fla. Whereas the statute had previously provided that chapter 443 should be lib *1279 erally construed in favor of a claimant of unemployment benefits, the statute now provides in pertinent part, “This chapter shall be liberally construed to accomplish its purpose to promote employment security by increasing opportunities for reemployment and to provide, through the accumulation of reserves, for the payment of compensation to individuals with respect to their unemployment.” § 443.031, Fla. Stat. (2011).
Workers discharged for misconduct connected with their work are disqualified from receiving unemployment compensation benefits. See § 443.101, Fla. Stat. (2011). As part of the legislative reform, the definition of misconduct was also amended. See Ch.2011-235, § 3, at 3485, Laws of Fla. Misconduct is defined as:
(30) “Misconduct,” irrespective of whether the misconduct occurs at the workplace or during working hours, includes, but is not limited to, the following, which may not be construed in pari materia with each other:
(a) Conduct demonstrating conscious disregard of an employer’s interests and found to be a deliberate violation or disregard of the reasonable standards of behavior which the employer expects of his or her employee.
(b) Carelessness or negligence to a degree or recurrence that manifests culpability or wrongful intent, or shows an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his or her employer.
(c) Chronic absenteeism or tardiness in deliberate violation of a known policy of the employer or one or more unapproved absences following a written reprimand or warning relating to more than one unapproved absence.
(d) A willful and deliberate violation of a standard or regulation of this state by an employee of an employer licensed or certified by this state, which violation would cause the employer to be sanctioned or have its license or certification suspended by this state.
(e) A violation of an employer’s rule, unless the claimant can demonstrate that:
1. He or she did not know, and could not reasonably know, of the rule’s requirements;
2. The rule is not lawful or not reasonably related to the job environment and performance; or
3. The rule is not fairly or consistently enforced.
§ 443.036(30), Fla. Stat. (2011).
The referee found Laneri substantially disregarded his duties and obligations to Worldwide under section 443.036(30)(b). We do not believe there was competent, substantial evidence to support that conclusion. This was an isolated incident involving an employee with over four years’ experience with his employer and no prior history of discipline. Laneri is personally responsible for strict compliance with FAA regulations, and inherent in his position is the exercise of independent judgment. The nature of his employment placed his life and the lives of others at risk should something go wrong. Laneri concluded that the combination of weather conditions and the fourteen-hour mandate made completion of his itinerary impossible. Both factors were implicated due to the tardiness of Worldwide’s first client. Even if Laneri’s judgment was in error, and even if it subjected him to discipline, the error does not manifest culpability or rise to the level of an intentional and substantial disregard of his employer’s interests. We have repeatedly held that in order to constitute misconduct, there must be more *1280 than an error in judgment or discretion. See Proffitt v. Unemployment Appeals Comm’n, 658 So.2d 185, 187 (Fla. 5th DCA 1995); Lewis v. Unemployment Appeals Comm’n, 498 So.2d 608, 609 (Fla. 5th DCA 1986). Accordingly, we reverse the decision of the referee disqualifying Laneri from receiving benefits.
REVERSED.
LAWSON and EVANDER, JJ., concur.

. Laneri's testimony was that Hunnicutt said, “F* * * you, you're fired."

. We note that Laneri's brief misapprehends this most basic of appellate precepts, arguing facts from the hearing in the light most favorable to the claimant's position, despite the referee’s findings to the contrary.